RECD S.E.C.

124 1994

016

# FISCAL AGENCY AGREEMENT

## between

## THE REPUBLIC OF ARGENTINA

### and

## BANKERS TRUST COMPANY, Fiscal Agent

Dated as of October 19, 1994

                                                                Page

1.   Securities Issuable in Series . . . . . . . . . . . . .    1

2.   Appointment of Fiscal Agent; Paying Agents . . . . . . .    3

3.   Authentication . . . . . . . . . . . . . . . . . . . .    3

4.   Registration, Transfers and Exchanges . . . . . . . . .    4

5.   Global Securities . . . . . . . . . . . . . . . . . . .    6

6.   Payment . . . . . . . . . . . . . . . . . . . . . . . .    9

7.   Additional Amounts . . . . . . . . . . . . . . . . . . .   11

8.   Mutilated, Destroyed, Stolen or Lost Certificates . . . .  11

9.   Redemption and Purchases . . . . . . . . . . . . . . . .   12

10.  Cancellation and Destruction . . . . . . . . . . . . . .   14

11.  Negative Pledge and Covenants . . . . . . . . . . . . .   14

12.  Default; Acceleration of Maturity . . . . . . . . . . .   17

13.  Limit on Liability; Acceptance of Appointment . . . . .   19

14.  Expenses and Indemnity . . . . . . . . . . . . . . . . .   20

15.  Successor Fiscal Agent . . . . . . . . . . . . . . . . .   20

16.  Meetings of Holders of Securities; Modifications . . . .   22

17.  Further Issues . . . . . . . . . . . . . . . . . . . . .   26

18.  Reports . . . . . . . . . . . . . . . . . . . . . . . .   26

19.  Forwarding of Notice; Inquiries . . . . . . . . . . . .   27

20.  Listings . . . . . . . . . . . . . . . . . . . . . . . .   27

21.  Notices . . . . . . . . . . . . . . . . . . . . . . . .   27

22.  Consent to Service; Jurisdiction . . . . . . . . . . . .   28

23.  Governing Law and Counterparts . . . . . . . . . . . . .   29

24.   Headings . . . . . . . . . . . . . . . . . . . . . .   29

Exhibit A - Form of Registered Security

FISCAL AGENCY AGREEMENT dated as of October 19, 1994, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1.    Securities Issuable in Series.    (a)    The Republic may issue its notes, securities, debentures or other evidences of indebtedness (the "Securities") in separate series from time to time (each such series of Securities being hereinafter referred to as a "Series" or the "Securities of a Series").   The aggregate principal amount of the Securities of all Series which may be authenticated and delivered under this Agreement and which may be outstanding at any time is not limited by this Agreement.   The text of the Securities of a Series delivered to the Fiscal Agent (as hereinafter defined) for authentication on original issuance pursuant to Section 3 of this Agreement shall establish (i) the specific designation of the Securities of such Series (which shall distinguish the Securities of such Series from all other Series); (ii) any limit on the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such Series pursuant to the provisions of this Agreement or of the Securities of such Series); (iii) the price or prices (expressed as a percentage of the aggregate principal amount thereof) at which the Securities of such Series will be issued; (iv) the date or dates on which the principal and premium, if any, of the Securities of such Series is payable; (v) the rate or rates (which may be fixed or floating) per annum at which the Securities of such Series shall bear interest, if any, the date or dates from which such interest, if any, shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of holders of the Securities of such Series to whom interest is payable; (vi) the place or places where the principal of, and premium, if any, and interest on the Securities of such Series are payable; (vii) the price or prices at which, the period or periods within which and the terms and conditions upon which Securities of such Series may be redeemed, in whole or in part, at the option of the Republic or otherwise; (viii) the obligation, if any, of the Republic to redeem, purchase or repay Securities of such Series pursuant to any sinking fund or analogous provisions and the price or prices at which, the

upon which Securities of such Series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation; (ix) the minimum denomination and any multiples thereof of the Securities of such Series, which may be in U.S. dollars, another foreign currency, units of two or more currencies or amounts determined by reference to an index; (x) the currency or currencies in which the principal, premium, if any, or interest on such Securities may be payable; (xi) the manner in which the amount of payments of principal, premium, if any, or interest on such Securities is to be determined and if such determination is to be made with reference to any index; (xii) any covenants or agreements of the Republic and events which give rise to the right of a holder of a Security of such Series to accelerate the maturity of such Security other than such covenants, agreements or events specified herein; and (xiii) any other terms of the Securities of such Series. Securities may be issuable pursuant to warrants (if so provided in the text of such Securities) and the Fiscal Agent may act as warrant agent or in any similar capacity in connection therewith.

(b) The Securities of a Series are to be issued in fully registered form only, without interest coupons, and will be issuable in the denominations specified in the text of the Securities of such Series, substantially in the form of Exhibit A hereto ("registered Securities"). The Securities of a Series may also have such additional provisions, omissions, variations or substitutions as are not inconsistent with the provisions of this Agreement, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with the rules of any securities exchange or governmental agency or as may, consistent herewith, be determined by the officials executing such Securities, as evidenced by their execution of such Securities. All Securities of a particular Series shall be otherwise substantially identical except as to denomination and as provided herein.

(c) The Securities will constitute (except as provided in Section 11 below) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves. The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

2

**2.   Appointment of Fiscal and Paying Agents**

(a)   The Republic hereby appoints Bankers Trust Company, at present having its office at 4 Albany Street, New York, New York 10006 as fiscal agent, transfer agent, registrar and principal paying agent of the Republic for the Securities, upon the terms and conditions set forth herein.  Bankers Trust Company accepts such appointments, and along with its successors as such fiscal agent, is hereinafter referred to as the "Fiscal Agent".  The Republic reserves the right to appoint different fiscal agents for different series of securities.

(b)   The Republic may appoint one or more additional agents (hereinafter called a "Paying Agent" or the "Paying Agents") for the payment (subject to the applicable laws and regulations) of the applicable payment of principal, premium, if any, and interest or Additional Amounts (as defined in Section 7 hereof), if any, on the Securities at such place or places as the Republic may determine pursuant to an agreement (each, a "Paying Agency Agreement"); provided that the Republic will maintain at all times until no Security is outstanding a Paying Agent (who may be the Fiscal Agent) in the Borough of Manhattan, The City of New York.  The Republic will keep the Fiscal Agent informed as to the name, address, and telephone and facsimile numbers of each Paying Agent appointed by it and will notify the Fiscal Agent of the resignation of any Paying Agent.  The Fiscal Agent shall arrange with each Paying Agent for the payment, as provided herein, of the principal and interest or Additional Amounts, if any, on the Securities on terms previously approved in writing by the Republic (further references herein to principal and interest shall be deemed to also refer to any Additional Amounts).

3.   **Authentication**.  (a)  The Fiscal Agent shall, upon delivery of the Securities to it by the Republic, and a written order or orders to authenticate and deliver Securities in a stated aggregate principal amount, (1) authenticate and register not more than said aggregate principal amount of Securities and deliver them in accordance with the written order or orders of the Republic and (ii) thereafter authenticate and register Securities and deliver them in accordance with the provisions of Sections 4, 5 and 9 of this Agreement.  The total principal amount of the Securities to be issued and outstanding at any time shall not be limited hereby.

(b)   The Fiscal Agent may, with the prior written consent of the Republic, appoint by an instrument or instruments in writing one or more agents (which may include

3

itself) for the authentication of Securities of a Series and, with such consent, vary or terminate any such appointment upon written notice and approve any change in the office through which any authenticating agent acts. The Republic (by written notice to the Fiscal Agent and the authenticating agent whose appointment is to be terminated) may also terminate any such appointment at any time. The Fiscal Agent hereby agrees to solicit written acceptances from the entities concerned (in form and substance satisfactory to the Republic) of such appointments. In its acceptance of such appointment, each such authenticating agent shall agree to act as an authenticating agent pursuant to the terms and conditions of this Agreement.

(c)  Until definitive Securities of a Series are prepared, the Republic may execute, and there shall be authenticated and delivered in accordance with the provisions hereof (in lieu of definitive Securities of such Series), temporary Securities of such Series. Such temporary Securities of a Series shall be subject to the same limitations and conditions and entitled to the same rights and benefits as definitive Securities of such Series, except as provided herein or therein. Temporary Securities of a Series shall be exchangeable for definitive Securities of such Series when such definitive Securities are available for delivery; and upon the surrender for exchange of such temporary Securities of a Series, the Republic shall execute and there shall be authenticated and delivered, in accordance with the provisions of Sections 3 and 4 hereof, in exchange for such temporary Securities of a Series, a like aggregate principal amount of definitive Securities of such Series and of like tenor. The Republic shall pay all charges, including (without limitation) stamp and other taxes and governmental charges, incident to any exchange of temporary Securities for definitive Securities. All temporary Securities shall be identified as such and shall describe the right of the holder thereof to effect an exchange for definitive Securities and the manner in which such an exchange may be effected.

4.  <u>Registration, Transfers and Exchanges</u>. (a) The Fiscal Agent, as agent of the Republic for such purpose, will at all times keep at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, a register or registers for the registration and registration of transfers and exchanges of Securities, in which shall be entered the names and addresses of the registered holders of Securities and the particulars of the Securities held by such registered holders. Subject to Section 5 hereof, upon surrender for transfer of any Security of any Series at said office, the Fiscal Agent shall authenticate, register and

deliver in the name of the transferee or transferees a new
Security or Securities of any Series for a like aggregate
principal amount.  Subject to Section 5 hereof, upon
surrender of any Security at said office for exchange, the
Fiscal Agent shall authenticate, register and deliver in
exchange for such Security a new Security or new Securities
of the appropriate authorized denomination(s) and for a like
aggregate principal amount in accordance with the provisions
of the Securities.

(b)    All new Securities authenticated and
delivered by the Fiscal Agent upon registration of transfer
or in exchange for Securities of other denominations shall
be so dated that neither gain nor loss of interest shall
result from such registration of transfer or exchange.

(c)    All Securities presented or surrendered for
registration of transfer, exchange or payment shall be
accompanied by a written instrument or instruments of
transfer in form satisfactory to the Fiscal Agent, duly
executed by the registered holder or its attorney duly
authorized in writing and with the signatures thereon duly
guaranteed by a commercial bank or trust company having its
principal office in The City of New York or by a member of
the New York Stock Exchange.

(d)    The Fiscal Agent shall not impose any service
charge on the registered holder on any such registration,
transfer or exchange of Securities; however, the Republic
may require of the party requesting such transfer or
exchange, as a condition precedent to the exercise of any
right of transfer or exchange contained in this Agreement or
in the Securities, the payment of a sum sufficient to cover
any stamp or other tax or other governmental charge payable
in connection therewith.

(e)    The Republic, the Fiscal Agent and any Paying
Agent may treat the person in whose name any Security is
registered as the owner of such Security for the purpose of
receiving payment of principal of and interest on such
Security, and all other purposes whatsoever, whether or not
such Security be overdue, and none of the Republic, the
Fiscal Agent or any Paying Agent shall be affected by any
notice to the contrary and any such payment shall be a good
and sufficient discharge to the Republic, the Fiscal Agent
and any Paying Agent for the amount so paid.

(f)    The Fiscal Agent shall not be required to
register any transfer or exchange of Securities during the
period from the Regular Record Date (as defined in such
Securities) to the Interest Payment Date (as defined in such

5

made in accordance with Section 6 hereof, such payment shall
be made to those persons in whose names the Securities are
registered on such Regular Record Date.

5. **Global Securities**. The Securities of any
Series may be issued in whole or in part in the form of one
or more global securities ("Global Securities") that will be
deposited with, or on behalf of, a depositary (the
"Depositary") relating to such Series. Global Securities
may be issued only in fully registered form and in either
temporary or definitive form. Unless and until it is
exchanged in whole or in part for Securities in definitive
form, a Global Security may not be transferred except as a
whole by the Depositary for such Global Security to a
nominee of such Depositary or by a nominee of such
Depositary to such Depositary or another nominee of such
Depositary or by such Depositary or any nominee of such
Depositary to a successor Depositary or any nominee of such
successor.

Upon the issuance of a Global Security, the
Depositary for such Global Security will credit on its book-
entry registration and transfer system the respective
principal amounts of the Securities represented by such
Global Security to the accounts of Persons that have
accounts with such Depositary ("Participants"). The
accounts to be credited shall be designated by the agents or
underwriters with respect to such Securities or by the
Republic if such Securities are offered and sold directly by
the Republic. Ownership of beneficial interests in a Global
Security will be limited to Participants or Persons that may
hold interests through Participants. Ownership of
beneficial interests in a Global Security will be shown on,
and the transfer of that ownership will be effected only
through, records maintained by the applicable Depositary
(with respect to interests of Participants) and records of
Participants (with respect to interests of Persons who hold
through Participants). Owners of beneficial interests in a
Global Security (other than Participants) will not receive
written confirmation from the applicable Depositary of their
purchase. Each beneficial owner is expected to receive
written confirmation providing details of the transaction,
as well as periodic statements of its holdings, from the
Depositary (if such beneficial owner is a Participant) or
from the Participant through which such beneficial owner
entered into the transaction (if such beneficial owner is
not a Participant). The laws of some states require that
certain purchasers of securities take physical delivery of
such securities in definitive form. Such limits and such

6

laws may impair the ability to own, pledge or transfer
beneficial interests in a Global Security.

So long as the Depositary for a Global Security,
or its nominee, is the registered owner of such Global
Security, such Depositary or such nominee, as the case may
be, will be considered the sole owner or holder of the
Securities represented by such Global Security for all
purposes under this Agreement.  Except as specified below or
with respect to the terms of Securities of a Series, owners
of beneficial interests in a Global Security will not be
entitled to have any of the individual Securities
represented by such Global Security registered in their
names, and will not receive or be entitled to receive
physical delivery of any such Securities in definitive form
and will not be considered the owners or holders thereof
under such Securities or this Agreement.  Accordingly, each
Person owning a beneficial interest in a Global Security
must rely on the procedures of the Depositary for such
Global Security and, if such Person is not a Participant, on
the procedures of the Participant through which such Person
owns its interest, to exercise any rights of a holder under
the Securities or this Agreement.  The Republic understands
that under existing industry practices, if the Republic
requests any action of holders, or an owner of a beneficial
interest in such Global Security desires to take any action
which a holder is entitled to take under the Fiscal Agency
Agreement, the Depositary for such Global Security would
authorize the Participants holding the relevant interests to
take such action, and such Participants would authorize
beneficial owners owning through such Participants to take
such action or would otherwise act upon the instructions of
beneficial owners holding through them.

Payments of principal of and any premium and any
interest on Securities registered in the name of a
Depositary or its nominee will be made to the Depositary or
its nominee, as the case may be, as the holder of the Global
Security representing such Securities.  None of the
Republic, any Paying Agent or the Fiscal Agent, in its
capacity as registrar for such Debt Securities, will have
any responsibility or liability for any aspect of the
records relating to or payments made on account of
beneficial interests in a Global Security or for
maintaining, supervising or reviewing any records relating
to such beneficial interests.

The Republic expects that the Depositary for a
series of Securities or its nominee, upon receipt of any
payment of principal, premium or interest in respect of a
Global Security representing such Securities will credit

7

Participants' accounts with payments in amounts proportionate to their respective beneficial interests in the principal amount of such Global Security as shown on the records of such Depositary. The Republic also expects that payments by Participants to owners of beneficial interests in such Global Security held through such Participants will be governed by standing instructions and customary practices, as is now the case with securities held for the accounts of customers in bearer form or registered in "street name". Such payments will be the responsibility of such Participants.

If at any time the Depositary notifies the Republic that it is unwilling or unable to continue as Depositary for the Securities, or if the Republic notifies the Depositary that it will no longer continue as Depositary for the Securities, or if at any time the Depositary ceases to be a clearing agency registered under the United States Securities Exchange Act of 1934, as amended, or otherwise ceases to be eligible to be a Depositary, the Republic shall appoint a successor Depositary with respect to such Securities. If a successor Depositary for such Securities is not appointed by the Republic within 90 days after the Republic receives such notice or becomes aware of such ineligibility, or if the Depositary notifies the Fiscal Agent or the Republic of the acceleration of the indebtedness under the Securities in accordance with the terms of the Securities, the Republic will execute, and the Fiscal Agent upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series), in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

The Republic may at any time and in its sole discretion determine not to have any of the Securities held in the form of Global Securities. In such event, the Republic will execute, and the Fiscal Agent, upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series, in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

Upon the exchange of the Global Securities for Securities in definitive registered form the Global Securities shall be canceled by the Fiscal Agent.

securities in definitive registered form issued in exchange
for the Global Securities pursuant to this section shall be
registered in such names as the Depositary, pursuant to
instructions from its direct or indirect participants or
otherwise, shall instruct the Fiscal Agent or the Republic.
The Fiscal Agent shall deliver such Securities in definitive
registered form to or as directed by the persons in whose
names such definitive registered Securities are so
registered and will direct all payments to be made in
respect of such Securities in definitive registered form to
the registered holders thereof on or after such exchange
regardless of whether such exchange occurred after the
record date for such payment.

            All Securities in definitive registered form,
issued upon the exchange of the Global Securities, shall be
valid obligations of the Republic, evidencing the same debt,
and entitled to the same benefits under this Agreement, as
the Global Securities surrendered upon such exchange.

            6.    Payment.   (a)   The Republic will pay to the
Fiscal Agent, the amounts, at the times and for the purposes
set forth herein and in the text of the Securities of a
Series, not later than 1:00 p.m. New York City time to an
account to be specified by the Fiscal Agent, on the day on
which the same shall become due, all amounts to be paid on
the Securities of such Series as required by the terms of
the Securities, and the Republic hereby authorizes and
directs the Fiscal Agent, from the funds so paid to it, to
make payments in respect of the Securities in accordance
with their terms and the provisions set forth below.  If any
date for payment in respect of a Security is not a Business
Day, such payment shall be made on the next following
Business Day.  "Business Day" means a day on which banking
institutions in The City of New York and at the applicable
place of payment are not authorized or obligated by law or
executive order to be closed.  The Fiscal Agent shall
arrange directly with any Paying Agent who may have been
appointed pursuant to the provisions of Section 2 hereof for
the payment from funds so paid by the Republic of the
principal of (and premium, if any) and any interest on the
Securities of such Series as set forth herein and in the
text of said Securities.  Notwithstanding the foregoing,
where the terms of such Securities expressly so provide and
the Republic so notifies the Fiscal Agent the Republic may
provide directly a Paying Agent with funds for the payment
of the principal thereof and premium and interest, if any,
payable thereon under an agreement with respect to such
funds containing substantially the same terms and conditions
set forth in this Section; and the Fiscal Agent shall have

no responsibility with respect to any funds so provided by
the Republic to any such Paying Agent.

        (b)  All payments with respect to the Global
Securities shall be made by the Fiscal Agent to the
Depositary in accordance with the regular procedures
established from time to time by the Depositary.

        (c)  Payment of principal and premium, if any, in
respect of Securities in definitive registered form issued
pursuant hereto shall be made at the office of the Fiscal
Agent in the Borough of Manhattan, The City of New York, or
at the office of any Paying Agent appointed by the Republic
for such purpose pursuant to this Agreement against
surrender of such Securities.  Any interest on Securities of
a Series shall be paid, unless otherwise provided in the
text of the Securities of such Series, to the persons in
whose names such Securities are registered on the register
maintained for such purposes at the close of business on the
record dates designated in the text of the Securities of
such Series.  If so provided with respect to the Securities
of a Series, payments of interest due prior to or on
maturity may be made by forwarding by post or otherwise
delivering a check to the registered addresses of registered
holders of Securities, or, at the option of the Republic,
otherwise transferring funds to the registered holders of
the Securities.  Such check shall be made payable to the
order of the registered holder or, in the case of joint
registered holders, to the order of all such joint holders
(failing instructions from them to the contrary) and shall
be sent to the address of that one of such joint holders
whose name stands first in the register as one of such joint
holders.  The Fiscal Agent shall mail or otherwise deliver
such checks to the names and addresses of registered holders
of Securities sufficiently in advance of the relevant due
date for payment that receipt of such checks by registered
holders on or before the due date is reasonably assured.

        (d)  All money paid to the Fiscal Agent under
Section 6(a) of this Agreement shall be held by it in a
separate account from the moment when such money is received
until the time of actual payment, in trust for the
registered holders of Securities to be applied by the Fiscal
Agent to payments due on the Securities at the time and in
the manner provided for in this Agreement and the
Securities.  Any money deposited with the Fiscal Agent for
the payment in respect of any Security remaining unclaimed
for two years after such principal or interest shall have
become due and payable shall be repaid to the Republic upon
written request without interest, and the registered holder

of Security may thereafter look only to the Republic for any
payment to which such holder may be entitled.

7. **Additional Amounts.** All payments of
principal, premium, if any, and interest in respect of the
Securities by the Republic will be made free and clear of,
and without withholding or deduction for or on account of,
any present or future taxes, duties, assessments or
governmental charges of whatever nature imposed, levied,
collected, withheld or assessed by or within the Republic or
any authority therein or thereof having power to tax
(together "Taxes"), unless such withholding or deduction is
required by law.  In such event, the Republic shall pay such
additional amounts ("Additional Amounts") as will result in
receipt by the holders of Securities of such amounts of
principal, premium and interest as would have been received
by them had no such withholding or deduction been required,
except that no such Additional Amounts shall be payable with
respect to any Security:

   (a)  to a holder (or to a third party on behalf of a
        holder) where such holder is liable for such Taxes
        in respect of any Security by reason of his having
        some connection with the Republic other than the
        mere holding of such Security or the receipt of
        principal, premium or interest in respect thereof;
        or

   (b)  presented for payment more than 30 days after the
        Relevant Date, as defined herein, except to the
        extent that the holder thereof would have been
        entitled to Additional Amounts on presenting the
        same for payment on the last day of such period of
        30 days.

        "Relevant Date" in respect of any Security means
the date on which payment in respect thereof becomes due or
(if the full amount of the money payable on such date has
not been received by the Fiscal Agent on or prior to such
due date) the date on which notice is duly given to the
holders in the manner described in Section 21 below that
such moneys have been so received and are available for
payment.  Any reference herein to "principal" and/or
"interest" shall be deemed to include any Additional Amounts
which may be payable under the Securities.

        So long as any Security remains outstanding, the
Republic covenants to maintain its membership in, and its
eligibility to use the general resources of, the
International Monetary Fund.

11

**8. Mutilated, Destroyed, Stolen or Lost Certificates.** (a) In case any Security certificate is mutilated, defaced, destroyed, stolen or lost, application for replacement shall be made to the Fiscal Agent who shall promptly transmit such application to the Republic. Such application shall be accompanied by the mutilated or defaced certificate or receipt of proof, satisfactory to the Republic in its discretion, of the destruction, theft or loss of the certificate, and upon receipt by it of an indemnity satisfactory to the Republic and the Fiscal Agent, the Republic shall execute a new certificate of like tenor, and upon written instructions from the Republic the Fiscal Agent shall thereupon cancel the mutilated or defaced certificate if applicable and authenticate, register and deliver such new certificate in exchange for the mutilated or defaced certificate or in substitution for the destroyed, stolen or lost certificate. Such new certificate will be so dated that neither gain nor loss in interest will result from such exchange or substitution. All expenses associated with procuring such indemnity and with the preparation, authentication and delivery of a new certificate will be borne by the registered holder of the mutilated, defaced, destroyed, stolen or lost certificate.

(b) Whenever any Security, alleged to have been lost, stolen or destroyed in replacement for which a new Security has been issued, is presented to the Fiscal Agent or any Paying Agent for payment at maturity or at redemption or for registration of transfer or exchange, the Fiscal Agent or the Paying Agent, as the case may be, shall immediately notify the Republic in respect thereof and shall deal with such Security in accordance with the Republic's instructions.

**9. Redemption and Purchases.** (a) Unless otherwise permitted by the terms of the Securities of a Series, Securities will not be redeemable prior to maturity at the option of the Republic or the registered holders thereof.

(b) The Republic hereby authorizes and directs the Fiscal Agent to administer the sinking fund with respect to the Securities of any Series having a mandatory sinking fund or similar provision in accordance with the provisions set forth in the terms of the Securities of such Series. If the provisions of the Securities of a Series permit the Republic to redeem Securities of such Series at its option, then the Republic shall, unless otherwise provided in the terms of the Securities of such Series, give written notice to the Fiscal Agent of the principal amount of Securities of such Series to be so redeemed not less than 60 days prior to

12

the optional redemption date.  If the provisions of the
Securities of a Series permit the Republic to redeem
Securities of such Series only upon the occurrence or
satisfaction of a condition or conditions precedent thereto,
then prior to the giving of notice of redemption of the
Securities of such Series, the Republic shall deliver to the
Fiscal Agent a certificate stating that the Republic is
entitled to effect such redemption and setting forth in
reasonable detail a statement of facts showing that such
condition or conditions precedent have occurred or been
satisfied.  If the provisions of the Securities of a Series
obligate the Republic at the request of the holders to
redeem Securities of such Series upon the occurrence of
certain events (each hereinafter referred to as a
"Redemption Event"), then the Republic shall promptly
deliver written notice to the Fiscal Agent that a Redemption
Event has occurred.  Promptly after receiving written notice
of a Redemption Event, the Fiscal Agent shall deliver
written notice to each holder of the Securities of such
Series stating that a Redemption Event has occurred and that
such holder may tender its Securities by delivering written
notice of its election to tender for redemption, together
with the certificate or certificates for the Securities to
be redeemed, to the Fiscal Agent within 60 days of the
Fiscal Agent's notice (hereinafter referred to as the
"Option Period").  Thereafter, the Republic shall (i) in the
manner provided in the provisions of the Securities of such
Series and as contemplated by Section 6 hereof, arrange with
the Fiscal Agent (and each Paying Agent for the purpose, if
applicable) for the provision of funds sufficient to make
payments to such holders in respect of such redemptions, and
(ii) redeem such Securities within 60 days of the expiration
of the Option Period.  The Fiscal Agent shall provide the
Republic from time to time during and upon expiration of the
Option Period with reasonable detailed information as to
Securities tendered for redemption.

          All notices of redemption of or Redemption Events
relating to Securities of a Series to the holders thereof
shall be made in the name and at the expense of the Republic
and shall be given in accordance with the provisions
applicable thereto set forth in the terms of the Securities
of such Series.

          Whenever less than all the Securities of a Series
with the same interest rate and maturity at any time
outstanding are to be redeemed at the option of the
Republic, the particular Securities of such Series with such
interest rate and maturity to be redeemed shall be selected
not more than 60 days prior to the redemption date by the
Fiscal Agent from the outstanding Securities of such Series

not previously called for redemption by such usual method as the Fiscal Agent shall deem fair and appropriate, which method may provide for the selection for redemption of portions of the principal amount of registered Securities of such Series the minimum denominations of which, if any, will be specified in the terms of the Securities of such Series. Upon any partial redemption of a registered Security of a Series, the Fiscal Agent shall authenticate and deliver in exchange therefor one or more registered Securities of such Series, of any authorized denomination and like tenor as requested by the holder thereof, in aggregate principal amount equal to the unredeemed portion of the principal of such Security.

(c)   The Republic may at any time purchase Securities at any price in the open market or otherwise, provided that in any such case such purchase or purchases are in compliance with all relevant laws, regulations and directives.   Securities so purchased by the Republic, may, at the Republic's discretion, be held, resold or surrendered to the Fiscal Agent for cancellation.  The Securities so purchased, while held by or on behalf or for the benefit of the Republic shall not entitle the registered holder thereof to vote at any meetings of registered holders of Securities and shall not be deemed to be outstanding for the purposes of calculating quorums at meetings of the registered holders of the Securities.  Notwithstanding the foregoing, the Republic will not acquire any beneficial interest in any Securities unless it gives prior written notice of each acquisition to the Fiscal Agent.  The Fiscal Agent will be entitled to rely without further investigation on any such notification (or lack thereof).

(d)   If the Republic elects to cancel any Securities when Securities have been issued in the form of a Global Security, it may request the Fiscal Agent to instruct the Depositary to reduce the outstanding aggregate principal amount of the Global Securities in accordance with the regular procedures of the Depositary in effect at such time.

10.   Cancellation and Destruction.  All Securities which are paid at maturity or upon earlier repurchase, or are mutilated, defaced or surrendered in exchange for other certificates, shall be cancelled by the Fiscal Agent who shall register such cancellation.  The Fiscal Agent shall, as soon as practicable after the date of any such cancellation, furnish the Republic with a certificate or certificates stating the serial numbers and total number of Securities that have been cancelled.  The Fiscal Agent shall destroy all cancelled Securities in accordance with the instructions of the Republic and shall furnish to the

Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all securities destroyed hereunder.

11. **Negative Pledge and Covenants.** So long as any Security remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the holders of the Securities (as provided in Section 16).

Notwithstanding the foregoing, the Republic may permit to subsist:

(i) any Lien upon property to secure Public External Indebtedness of the Republic incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii) any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii) any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized securities issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

15

(iv) any Lien in existence on the date of this Agreement;

(v) any Lien securing Public External Indebtedness of the Republic issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi) any Lien on any of the Par and Discount Bonds; and

(vii) any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this Agreement:

"External Indebtedness" means obligations (other than the Securities) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness, as defined below, shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic, any External Indebtedness of, or guaranteed by, the Republic which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, securities, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

16

"Domestic Foreign Currency Indebtedness" means (i)
the following indebtedness:  (a) Bonos del Tesoro issued
under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos
de Consolidación issued under Law No. 23,982 and Decree No.
2140/91, (c) Bonos de Consolidación de Deudas Previsionales
issued under Law No. 23,982 and Decree No. 2140/91, (d)
Bonos de la Tesorería a 10 Años de Plazo issued under Decree
No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería
a 5 Años Plazo issued under Decree No. 211/92 nd Decree No.
526/92, (f) Ferrobonos issued under Decree No. 52/92 and
Decree No. 526/92 and (g) Bonos de Consolidación de Regalías
Hidrocarburíferas a 16 Años de Plazo issued under Decree No
2284/92 and Decree No. 54/93; (ii) any indebtedness issued
in exchange, or as replacement, for the indebtedness
referred to in (i) above; and (iii) any other indebtedness
payable by its terms, or which at the option of the holder
thereof may be payable, in a currency other than the lawful
currency of the Republic of Argentina which is (a) offered
exclusively within the Republic of Argentina or (b) issued
in payment, exchange, substitution, discharge or replacement
of indebtedness payable in the lawful currency of the
Republic of Argentina; provided that in no event shall the
following indebtedness be deemed to constitute "Domestic
Foreign Currency Indebtedness":  (1) Bonos Externos de la
República Argentina issued under Law No. 19,686 enacted on
June 15, 1972 and (2) any indebtedness issued by the
Republic in exchange, or as replacement, for any
indebtedness referred to (1) above.

12.  **Default; Acceleration of Maturity**.  If any of
the following events ("Events of Default") with respect to
the Securities of any Series occurs and is continuing:

(a)  Non-Payment:  the Republic fails to pay any
principal of any of the Securities of such Series when due
and payable or fails to pay any interest on any of the
Securities of such Series when due and payable and such
failure continues for a period of 30 days; or

(b)  Breach of Other Obligations:  the Republic
does not perform or comply with any one or more of its other
obligations in the Securities of such Series or in this
Agreement, which default is incapable of remedy or is not
remedied within 90 days after written notice of such default
shall have been given to the Republic by the Fiscal Agent;
or

(c)  Cross Default:  any event or condition shall
occur which results in the acceleration of the maturity
(other than by optional or mandatory prepayment or
redemption) of the Securities of any other Series or of any

17

Public External Indebtedness of the Republic having an aggregate principal amount of U.S. $30,000,000 or more, or any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, the Securities of any other Series or any such Public External Indebtedness having an aggregate principal amount of U.S. $30,000,000 or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic or;

(e) Validity: the validity of the Securities of such Series shall be contested by the Republic;

then the holders of not less than 25 percent in aggregate principal amount of the Securities of such Series by notice in writing to the Republic at the specified office of the Fiscal Agent shall declare the principal amount of all the Securities of such Series to be due and payable immediately, and, in the case of (a) and (d) above, each holder of Securities of such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all the Securities of such Series shall have been cured; provided that in the case of (b), (d) and (e) above, such event is materially prejudicial to the interests of the holders of the Securities of such Series, and provided further, that if, at any time after the principal of the Securities of such Series shall have been so declared due and payable, and before any sale of property under any judgment or decree for the payment of the monies due shall have been obtained or entered as hereinafter provided, the Republic shall pay or shall deposit with the Fiscal Agent a sum sufficient to pay all matured amounts of interest and principal upon all the Securities which shall have become due and otherwise than solely by declaration (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each of the Securities at the rate of interest applicable thereto, to the date of such payment or deposit; and the expenses of the Fiscal Agent, and reasonable compensation to the Fiscal Agent, its agents, legal advisers, and any and all defaults under the Securities of such Series, other than the non-payment of principal on the

18

Securities of such Series which shall have become due solely
by declaration, shall have been remedied, then, and in every
such case, the holders of 75 percent in aggregate principal
amount of the Securities of such Series then outstanding,
after a meeting of holders of Securities held in accordance
with the procedures described in Section 16 below, by
written notice to the Republic at the specified office of
the Fiscal Agent, may on behalf of the holders of all of the
Securities of such Series waive all defaults and rescind and
annul such declaration and its consequences: but no such
waiver or rescission and annulment shall extend to or shall
affect any subsequent default, or shall impair any right
consequent thereon.

13.  (a)  Limit on Liability.  In acting under
this Agreement the Fiscal Agent and any Paying Agent are
acting solely as agents of the Republic and do not assume
any obligation or relationship of agency or trust for or
with any of the holders of the Securities, except that all
funds held by the Fiscal Agent for payment of principal or
interest shall be held in trust, subject to the provisions
of Section 6.

(b)  Acceptance of Appointment.  The Fiscal Agent
and each Paying Agent accepts its obligations set forth in
or arising under this Agreement, the Paying Agency
Agreements and the Securities upon the terms and conditions
hereof and thereof, including the following, to all of which
the Republic agrees and to all of which the holders of the
Securities shall be subject:

(i)  the Fiscal Agent may consult as to legal
matters with lawyers selected by it, who may be
employees of or regular independent counsel to the
Republic, and the Fiscal Agent shall be protected and
shall incur no liability for action taken, or suffered
to be taken, with respect to such matters in good faith
and in accordance with the opinion of such lawyers; and

(ii)  the Fiscal Agent and each Paying Agent, and
their officers, directors and employees, may become the
holder of, or acquire any interest in, any Securities,
with the same rights that it or they would have if it
were not the Fiscal Agent or a Paying Agent hereunder,
or they were not such officers, directors, or
employers, and may engage or be interested in any
financial or other transaction with the Republic and
may act on, or as depository, trustee or agent for, any
committee or body of holders of Securities or other
obligations of the Republic as freely as if it were not

19

the Fiscal Agent or a Paying Agent hereunder or they
were not such officers, directors, or employees.

14. **Expenses and Indemnity.** (a) In connection
with the Fiscal Agent's appointment and duties as Fiscal
Agent, the Republic will pay the Fiscal Agent compensation
agreed upon by them. The Republic will indemnify the Fiscal
Agent and each Paying Agent against any loss or liability
and agrees to pay or reimburse the Fiscal Agent and each
Paying Agent for any reasonable expense, which loss,
liability or reasonable expense may be incurred by the
Fiscal Agent or any Paying Agent by reason of, or in
connection with, the Fiscal Agent's or any Paying Agent's
appointment and duties as such, except as such result from
the negligence, bad faith or wilful misconduct of the Fiscal
Agent or any Paying Agent or their respective directors,
officers, employees or agents. In addition, the Republic
shall pursuant to arrangements separately agreed upon by the
Republic and the Fiscal Agent, transfer to the Fiscal Agent,
upon presentation of substantiating documentation
satisfactory to the Republic, amounts sufficient to
reimburse the Fiscal Agent for certain out-of-pocket
expenses reasonably incurred by it and by any Paying Agent
in connection with their services. The obligation of the
Republic under this paragraph shall survive payment of the
Securities and resignation or removal of the Fiscal Agent.

(b) The Fiscal Agent and each Paying Agent agrees
to indemnify and hold harmless the Republic against all
direct claims, actions, demands, damages, costs, losses and
liabilities (excluding consequential and punitive damages)
arising out of or relating to the bad faith or wilful
misconduct of the Fiscal Agent or any Paying Agent or their
respective directors, officers, employees or agents.

15. **Successor Fiscal Agent.** (a) The Republic
agrees that there shall at all times be a Fiscal Agent
hereunder, and that the Fiscal Agent shall be a bank or
trust company organized and doing business under the laws of
the United States of America or of the State of New York, in
good standing and having a place of business in the Borough
of Manhattan, The City of New York, and authorized under
such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal
Agent hereunder may be merged or converted, or any
corporation with which the Fiscal Agent may be consolidated,
or any corporation or bank resulting from any merger,
conversion or consolidation to which the Fiscal Agent shall
sell or otherwise transfer all or substantially all of the
corporate trust business of the Fiscal Agent, provided that

it shall be qualified as aforesaid, shall be the successor
Fiscal Agent under this Agreement without the execution or
filing of any paper or any further act on the part of any of
the parties hereto, but subject to prior notice to and the
prior approval of the Republic.

(b)  The Fiscal Agent may at any time resign by
giving written notice to the Republic of its resignation,
specifying the date on which its resignation shall become
effective (which shall not be less than 120 days after the
date on which such notice is given unless the Republic shall
agree to a shorter period); provided that no such notice
shall expire less than 30 days before or 30 days after the
due date for any payment of principal or interest in respect
of the Securities.  The Republic may remove the Fiscal Agent
at any time by giving written notice to the Fiscal Agent
specifying the date on which such removal shall become
effective.  Such resignation or removal shall only take
effect upon the appointment by the Republic of a successor
Fiscal Agent and upon the acceptance of such appointment by
such successor Fiscal Agent.  Any Paying Agent may resign or
may be removed at any time upon like notice, and the
Republic in any such case may appoint in substitution
therefor a new Paying Agent or Paying Agents.

(c)  The appointment of the Fiscal Agent hereunder
shall forthwith terminate, whether or not notice of such
termination shall have been given, if at any time the Fiscal
Agent becomes incapable of performing its duties hereunder,
or is adjudged bankrupt or insolvent, or files a voluntary
petition on bankruptcy or makes an assignment for the
benefit of its creditors or consents to the appointment of a
liquidator or receiver of all or any substantial part of its
property or admits in writing its inability to pay or meet
its debts as they mature or suspends payment thereof, or if
a resolution is passed or an order made for the winding up
or dissolution of the Fiscal Agent, or if a liquidator or
receiver of the Fiscal Agent of all or any substantial part
of its property is appointed, or if any order of any court
is entered approving any petition filed by or against it
under the provisions of any applicable bankruptcy or
insolvency law or if any public officer takes charge or
control of the Fiscal Agent or its property or affairs for
the purposes of rehabilitation, conservation or liquidation.

(d)  Prior to the effective date of any such
resignation or removal of the Fiscal Agent, or if the Fiscal
Agent shall become unable to act as such or shall cease to
be qualified as aforesaid, the Republic shall appoint a
successor Fiscal Agent, qualified as aforesaid.  Upon the
appointment of a successor Fiscal Agent and its acceptance

21

of such appointment, the retiring Fiscal Agent shall, at the
direction of the Republic and upon payment of its
compensation and expenses then unpaid, deliver and pay over
to its successor any and all securities, money and any other
properties then in its possession as Fiscal Agent and shall
thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder
shall execute, acknowledge and deliver to its predecessor
and to the Republic an instrument accepting such appointment
hereunder, and thereupon such successor without any further
act, deed or conveyance, shall become vested with all the
authority, rights, powers, trusts, immunities, duties and
obligations of such predecessor, with like effect as if
originally named Fiscal Agent hereunder.

(e)  If the Fiscal Agent resigns or ceases to act
as the Republic's fiscal agent in respect of the Securities
pursuant to Section 15(c) of this Agreement, the Fiscal
Agent shall only be entitled to annual fees otherwise
payable to it under this Agreement on a pro rata basis for
that period since the most recent anniversary of this
Agreement during which the Fiscal Agent has acted as fiscal
agent hereunder.  In the event that the Fiscal Agent ceases
to act as the Republic's fiscal agent in respect of the
Securities for any other reason, the Fiscal Agent shall be
entitled to receive the full amount of the annual fees
payable to it in respect of the Securities pursuant to
Section 14 of this Agreement.

16.  Meetings of Holders of Securities;
Modifications.   (a)  A meeting of registered holders of
Securities of any Series may be called at any time and from
time to time to make, give or take any request, demand,
authorization, direction, notice, consent, waiver or other
action provided by this Agreement or the Securities of any
Series to be made, given or taken by registered holders of
Securities of any Series or to modify, amend or supplement
the terms of the Securities of any Series or this Agreement
as hereinafter provided.  The Fiscal Agent may at any time
call a meeting of registered holders of Securities of any
Series for any such purpose to be held at such time and at
such place as the Fiscal Agent shall determine.  Notice of
every meeting of registered holders of Securities of any
Series, setting forth the time and the place of such meeting
and in general terms the action proposed to be taken at such
meeting, shall be given as provided in the terms of the
Securities of any Series, not less than 30 nor more than 60
days prior to the date fixed for the meeting.  In case at
any time the Republic or the registered holders of at least
10% in aggregate principal amount of the Outstanding

22

Securities of any Series (as defined in subsection (d) of this Section) shall have requested the Fiscal Agent to call a meeting of the registered holders of Securities of any Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

To be entitled to vote at any meeting of registered holders of Securities of any Series, a person shall be a registered holder of Outstanding Securities of any Series or a person duly appointed by an instrument in writing as proxy for such a holder. Any person appointed by an instrument in writing as proxy for a registered holder need not be a registered holder of Outstanding Securities of any Series. At any meeting each registered holder shall be entitled to one vote for each of those amounts held by such holder which represent the lowest denomination in which Securities of such Series as to which such holder is a holder may be transferred. The persons entitled to vote a majority in principal amount of the Outstanding Securities of any Series shall constitute a quorum. At the reconvening of any meeting adjourned for a lack of a quorum, the persons entitled to vote 25% in principal amount of the Outstanding Securities of any Series shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. The Fiscal Agent may make such reasonable and customary regulations as it shall deem advisable for any meeting of registered holders of Securities of any Series with respect to the appointment of proxies in respect of registered holders of Securities, the record date for determining the registered holders of Securities who are entitled to vote at such meeting (which date shall be set forth in the notice calling such meeting hereinabove referred to and which shall be not less than 30 nor more than 90 days prior to such meeting, the adjournment and chairmanship of such meeting) the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

(b)  (i)  At any meeting of registered holders of Securities of a Series duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the Securities of any Series with respect to the action being taken), or (ii) with the written consent of the owners of

23

not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the text of the Securities of any Series with respect to the action being taken), the Republic and the Fiscal Agent may modify, amend or supplement the terms of the Securities of any Series or this Agreement, in any way, and the registered holders of Securities of any Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given, or taken by registered holders of Securities of any Series; provided, however, that no such action may, without the consent of the registered holder of each Security of such Series, (A) change the due date for the payment of the principal of (or premium, if any,) or any installment of interest on any Security of such Series, (B) reduce the principal amount of any Security of such Series, the portion of such principal amount which is payable upon acceleration of the maturity of such Security, the interest rate thereon or the premium payable upon redemption thereof, (C) change the coin or currency in which or the required places at which payment with respect to interest, premium or principal in respect of Securities of such Series is payable, (D) amend the definition of Redemption Event in the Securities of such Series or the procedures provided therefore, (E) shorten the period during which the Republic is not permitted to redeem the Securities of such Series if, prior to such action, the Republic is not permitted to do so, (F) reduce the proportion of the principal amount of Securities of such Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of such Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (G) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of any Series, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in this Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of this Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of any Series and, if the Fiscal Agent so requires, such

24

Case 1:06-cv-01248-IPJ Document 20 Filed 09/15/2023 Page 28 of 34

Securities of any Series as soon as practicable.

It shall not be necessary for the vote or consent of the registered holders of the Securities of any Series to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

(o) Any instrument given by or on behalf of any registered holder of a Security in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent registered holders of such Security or any Security issued directly or indirectly in exchange or substitution therefor or in lieu thereof. Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of a Series will be conclusive and binding on all registered holders of Securities of such Series, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Securities of such Series. Notice of any modification or amendment or, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of such Series or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each registered holder of Securities of such Series, in all cases as provided in the Securities of such Series.

Securities of any Series authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to such Series may bear a notation in the form approved by the Fiscal Agent and the Republic as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action. New Securities modified to conform, in the opinion of the Fiscal Agent and the Republic, to any such modification, amendment, supplement, request, demand, authorization, direction,

25

the Republic, authenticated by the Fiscal Agent (or any
authenticating agent appointed pursuant to Section 3 hereof)
and delivered in exchange for Outstanding Securities of any
Series.

(d)   For purposes of the provisions of this
Agreement and the Securities of any Series, any Security
authenticated and delivered pursuant to this Agreement
shall, as of any date of determination, be deemed to be
"Outstanding", except:

(i)   Securities of any Series theretofore
cancelled by the Fiscal Agent or delivered to the
Fiscal Agent for cancellation or held by the Fiscal
Agent for reissuance but not reissued by the Fiscal
Agent; or

(ii)   Securities of any Series which have become
due and payable at maturity or otherwise and with
respect to which monies sufficient to pay the principal
thereof, premium, if any, and any interest thereon
shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the
registered holders of the requisite principal amount of
Outstanding Securities of any Series are present at a
meeting of registered holders of Securities for quorum
purposes or have consented to or voted in favor of any
request, demand, authorization, direction, notice, consent,
waiver, amendment, modification or supplement hereunder,
Securities of any Series owned directly or indirectly by the
Republic shall be disregarded and deemed not to be
Outstanding.

17.   Further Issues.   The Republic may from time
to time, without notice to or the consent of the registered
holders of the Securities of a Series, create and issue
further securities ranking pari passu with the Securities of
such Series in all respects (or in all respects except for
the payment of interest accruing prior to the issue date of
such further securities or except for the first payment of
interest following the issue date of such further
securities) and so that such further securities shall be
consolidated and form a single series with the Securities of
such Series and shall have the same terms as to status,
redemption or otherwise as the Securities.

18.   Reports.   (a)   The Fiscal Agent shall furnish
to the Republic such reports as may be required by the
Republic relative to the Fiscal Agent's performance under

26

this Agreement. The Republic may whenever it deems it
necessary, inspect books and records maintained by the
Fiscal Agent pursuant to this Agreement, if any.

(b)  The Fiscal Agent shall (on behalf of the
Holders) submit such reports or information as may be
required from time to time in relation to the issue and
purchase of Securities by applicable law, regulations and
guidelines promulgated by the United States government.

(c).  The Republic covenants to notify the Fiscal
Agent in writing immediately on becoming aware of any Event
of Default or any event or circumstance which could with the
giving of notice or lapse of time become an Event of Default
(a "Potential Event of Default").

(d)  The Republic will send to the Fiscal Agent,
on or before December 31 in each year (beginning with
December 31, 1994), and within 14 days after any written
notice by the Fiscal Agent, a certificate of the Republic
signed by a duly authorized official of the Republic to the
effect that, having made all reasonable inquiries, to the
best knowledge of such duly authorized official, no Event of
Default or Potential Event of Default has occurred and is
continuing on the date of such certificate or, if an Event
of Default or a Potential Event of Default has occurred, the
circumstances surrounding it and the steps that the Republic
has taken or proposes to take to remedy it.

(e)  The Republic will send to the Fiscal Agent as
soon as practicable after being so requested by the Fiscal
Agent a certificate of the Republic signed by a duly
authorized official of the Republic stating the aggregate
principal amount of the Securities held by or on behalf of
the Republic at the date of such certificate.

19.  **Forwarding of Notice; Inquiries**.  (a)  If the
Fiscal Agent shall receive any notice or demand addressed to
the Republic pursuant to the provisions of the Securities,
the Fiscal Agent shall promptly forward such notice or
demand to the Republic.

(b)  The Fiscal Agent shall respond promptly to
any inquiries received from any registered holder of
Securities regarding the matters covered by paragraphs (b),
(c) or (d) of Section 18 of this Agreement.

20.  **Listings**.  In the event that the terms of the
Securities of any Series provide for a listing on any stock
exchange, the Republic agrees to use all reasonable
endeavors to maintain the listing of the Securities on such

27

Exchange. If, however, it shall be unable to do so, having used such endeavors, or if the maintenance of such listing is agreed by the Fiscal Agent to be unduly onerous and the Fiscal Agent is satisfied that the interests of registered holders of the Securities would not thereby be materially prejudiced, it will instead use all reasonable endeavors to obtain and maintain a listing of the Securities on such other stock exchange or exchanges as it may decide.

21. **Notices.** (a) Any communications from the Republic to the Fiscal Agent with respect to this Agreement shall be addressed to Bankers Trust Company, 4 Albany Street, New York, New York 10006, Fax No.: 212-250-6961 or 212-250-6392, Tel. No.: 212-250-6571 and any communications from the Fiscal Agent to the Republic with respect to this Agreement shall be addressed to the Subsecretaría de Financiamiento, Hipolito Yrigoyen 250, Piso 10 - Oficina 1001, 1310 - Buenos Aires, Attention: Deuda Externa, Fax No.: 011-54-1-349-6080, Tel. No.: 011-541-349-6242 (or such other address as shall be specified in writing by the Fiscal Agent or by the Republic, as the case may be) and shall be delivered in person or sent by first class prepaid post or by facsimile transmission subject, in the case of facsimile transmission, to confirmation by telephone to the foregoing addresses. Such notice shall take effect in the case of delivery in person, at the time of delivery, in the case of delivery by first class prepaid post seven (7) business days after dispatch and in the case of delivery by facsimile transmission, at the time of confirmation by telephone.

(b) All notices to the registered holders of Securities of a Series will be published in such publications at such locations as any of the Securities of such Series are listed for the period of time of such listing and as otherwise provided pursuant to the terms of the Securities of such Series. If at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. [In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine.] Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made. Written notice will also be given to the Depositary, if at the time of such notice any of the Securities is represented by a Global Security.

Consent to Service; Jurisdiction. The Republic hereby appoints Banco de la Nación Argentina, at its office located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose) as its authorized agent (the "Authorized Agent") upon whom process may be served in any action arising out of or based on the Securities or this Agreement by the holder of any Security which may be instituted in any state or federal court in The City of New York, and expressly accepts the jurisdiction of any such court in respect of such action. Such appointment shall be irrevocable until all amounts in respect of the principal of and any interest due and to become due on or in respect of all the Securities have been provided to the Fiscal Agent pursuant to the terms hereof, except that, if for any reason, such Authorized Agent ceases to be able to act as Authorized Agent or to have an address in the Borough of Manhattan, The City of New York, the Republic will appoint another person in the Borough of Manhattan, The City of New York, selected in its discretion, as such Authorized Agent. Prior to the date of issuance of any Securities hereunder, the Republic shall obtain the consent of Banco de la Nación Argentina to its appointment as such Authorized Agent, a copy of which acceptance it shall provide to the Fiscal Agent. The Republic shall take any and all action, including the filing of any and all documents and instruments, that may be necessary to continue such appointment or appointments in full force and effect as aforesaid. Upon receipt of such service of process, the Authorized Agent shall advise the Subministry of Finance promptly by telecopier at 011-54-1-349-6080. Service of process upon the Authorized Agent at the address indicated above, as such address may be changed within the Borough of Manhattan, The City of New York by notice given by the Authorized Agent to each party hereto, shall be deemed, in every respect, effective service of process upon the Republic. The Republic hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any aforesaid action arising out of or in connection with this Agreement brought in any such court has been brought in an inconvenient forum. Neither such appointment nor such acceptance of jurisdiction shall be interpreted to include actions brought under the United States federal securities laws. This appointment and acceptance of jurisdiction is intended to be effective upon execution of this agreement without any further act by the Republic before any such court and introduction of a true copy of this Agreement into evidence shall be conclusive and final evidence of such waiver.

29

out of or based on the Securities may be instituted by the
holder of any security in any competent court in the
Republic of Argentina.

The Republic hereby irrevocably waives and agrees
not to plead any immunity from the jurisdiction of any such
court to which it might otherwise be entitled in any action
arising out of or based on the Securities or this Agreement
by the holder of any Security.

23. Governing Law and Counterparts. This
Agreement shall be governed by, and interpreted in
accordance with, the laws of the State of New York. This
Agreement may be executed in any number of counterparts,
each of which shall be deemed an original, but all of which
together shall constitute one and the same instrument.

24. Headings. The headings for the sections of
this Agreement are for convenience only and are not part of
this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA


By:  /s/ Noemi LaGreca
     Name:  Noemi LaGreca
     Title: Financial
            Representative of
            Argentina in the
            United States

BANKERS TRUST COMPANY


By:  /s/ Wanda Camacho
     Name:  Wanda Camacho
     Title: Assistant
            Secretary