UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARIA FAUSTA CILLI, ET AL.,

Plaintiffs,

v. 04 CV 6594 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

------------------------------x

New York, N.Y.
March 28, 2006
3:00 p.m.

Before:

HON. THOMAS P. GRIESA,

District Judge

APPEARANCES

DREIER
Attorneys for Plaintiffs
BY: JOEL A. CHERNOV
REGINA M. ALTER

CLEARY GOTTLIEB STEEN & HAMILTON
Attorney for Defendant
BY: CARMINE BOCCUZZI

(In open court)

THE COURT: What do we need to cover today?

MR. CHERNOV: Your Honor, Joel Chernov on behalf of the plaintiffs.

We're here in connection with your Honor's recent ruling in connection with the Cilli action, and I sent your Honor a letter asking to be heard; twofold, your Honor. There's a statement in -- one, your Honor required that the plaintiffs in this action provide proof of when they acquired their bonds and that was something that your Honor said would not be required when we were at the September 28 hearing and Mr. Blackman said he wouldn't require it on behalf of the Republic.

THE COURT: If I got it confused, I'm sorry.

MR. CHERNOV: Your Honor, what was said -- I can tell you what was said at the hearing. Mr. Blackman said as to the pending motions, what I said when we had our meeting two weeks ago -- I have the transcript from the September 28 hearing your Honor and --

THE COURT: What were we hearing?

MR. CHERNOV: We were hearing at that point the question of whether your Honor was going to require that the Republic waive their standing argument, the argument that the beneficial bond holders did not have standing; or whether you were going to require the bond holders to obtain authorization

from the depository trust company before maintaining their suits.

THE COURT: My recent decision.

MR. BOCCUZZI: Your Honor, I have an extra one. Would you like mine? It's clean.

MR. CHERNOV: On September 28, your Honor, we were addressing that standing issue if you might recall.

And what the court determined at the conclusion of the hearing was that if the Plaintiffs proved their ownership satisfactorily to the Court, the Republic would waive its standing defense.

And it was agreed that for motions going forward, the proof that the court would require would be a current account statement and proof of purchase of the securities or proof that the plaintiffs had those securities in their accounts --

THE COURT: Can we start again. I didn't have in my hand my recent decision. Just start again, if you don't mind.

MR. CHERNOV: Not at all, your Honor. What I was saying was at the September 28 hearing we were addressing the question of the proof that Plaintiffs needed to come forward with in order for the Republic to waive its standing argument, the argument that the beneficial bond holders needed to get authorization from the depository trust company.

And on September 28 your Honor said that for all motions going forward your Honor would require two things, a

current account statement or other proof of current ownership and proof of when they acquired their bonds, proof of when the plaintiffs either bought them, or if they didn't have that proof, proof that they had the bonds in their account at the time that the Republic defaulted, December, 2001.

That's what your Honor said we would require going forward.

THE COURT: For future motions.

MR. CHERNOV: Correct.

But what we also said was that for all pending motions we would not be required to go back and supplement -- automatically supplement the record.

And at that point what we had provided your Honor was account statements, current account statements. We had not provided your Honor with proof of purchase. And for that proposition, I have the transcript from the hearing on September 28 and that's annexed to my letter. And if you look at page 30 and 31 of that you can see, on page 30 of the transcript, Mr. Blackman said in the middle of the page: "And

as to the pending motions, what I have said when we had our meeting two weeks ago was that we would look at it on a case-by-case basis, which we'll do and see which ones we have. We want to see the confirms or other issues. We'll do it." And I believe what he was saying was that for the pending motions if they believed they needed to see a confirmation,

v

they would let us know.

Your Honor then stated in response to Mr. Blackman --

THE COURT: What page are you on?

MR. CHERNOV: Page 30, your Honor.

At the bottom your Honor says if everything is in order, and I'm reading from your Honor's statement that begins on line 22, "If everything is in order, according to the standards I've used on pending motions, what I'm going to do is to grant the motion, assuming everything is in order, subject to my possible need to supplement the record in accordance with what has been stipulated today. So they will not be held up and we will not -- there will be no need to automatically go back and supplement the record."

Based on that, your Honor, we did not -- based on this statement by Mr. Blackman and the statement by the court, we did not go back and supplement the record in the Cilli action and provide your Honor with proofs of purchase. And we represent the plaintiffs in --

THE COURT: I take it this was a pending motion.

MR. CHERNOV: This was a pending, fully submitted at the time of this hearing, yes, your Honor. And we have six other cases that are pending, still pending, your Honor, and that have been pending for the longest -- more than two years now. And that's our concern, is we do not want to have to go back to plaintiffs, who have had motions sitting for such

v

significant amounts of time, and now tell them we need more documents.

These are foreigners, your Honor. These are Argentinians, Italians. Already they're losing confidence in the system, in the fact that they don't understand why they don't have a judgment yet. For me to go back and say we need to now get more documents from you, your Honor, we submit is not in accordance with what was agreed and is not fair.

Now your Honor said --

THE COURT: I would think -- what does the Republic say?

MR. BOCCUZZI: Good afternoon, your Honor.

THE COURT: Do you agree?

MR. BOCCUZZI: As I understood the letter that Mr. Chernov submitted for today's conference, he had put forward three requests or statements to the court and we were in agreement with them.

One, that plaintiffs said they were prepared to give the proof of purchase for these folks, and we said that's fine.

Two, they said they would just attach them to a declaration, a lawyer's declaration as opposed to making people swear new declarations, and I said we were fine with that.

And three, they wanted to submit to the court a motion for reconsideration that they shouldn't have to, I guess in

63S9CILC.txt

other cases, put in proof of purchase. And they set a date for

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC Conference 7

that, and I said that was fine as well.

I think to the extent your Honor's opinion says that the need for proof of purchase is driven by the deal that was struck on September 28, I think that is part correct and part incorrect in that we all agreed that would be a case-by-case determination.

I don't think the issue that your Honor identifies, the need to identify when interest begins to run is precisely correctly stated.

However, I do think there is an issue in having to prove that they own the bond as of the date they accelerated. Because when you accelerate the bond, that is when you say I get principal and interest as of that date and then you -- plaintiffs have said and the way the judgments have come out in this case, you get the statutory interest based on that date forward in addition to the principal and interest.

In this case, the complaint and acceleration were in August, 2004 --

THE COURT: Let me just interrupt you. Look, I have handed down a bunch of decisions and I think that I have had reference to this September 28 conference before. I'll confess I really didn't understand what we agreed to and I didn't really completely understand the significance of whether somebody was an owner as of December 24, 2001 or exact -- or some later point or some earlier point. And so in working on

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC Conference 8

this decision, I said I've got to put down something that will make sense to me, and I guess it wasn't very successful, but at least it made some sense to me to think of possible -- a possible relation to the calculation of interest. Now, apparently that is not completely accurate.

What I think we ought to do, frankly, is to do this -- the problem is there was an appeal and the court of appeals said what it said and the Republic came down from the court of appeals with a -- with certain rights about standing.

Now, what we did after that was recognize that despite getting that wonderful opinion from the court of appeals, it would be preposterous to really take it seriously because if the -- if the actual owners of the bonds were to insist that they only -- they were the only people that had standing, they would have to come in -- they would have a fiduciary obligation to sue, and they weren't going to do that. So all of this was a total waste of time.

Now, what we ought to do is to do something that simplifies all of this. And as far as I'm concerned, all that should be shown is current ownership. And frankly, I don't think we should be bothered about whether there was ownership as of December 24 -- whatever it is, 2001, or whether they bought later. And I don't think we should be worried about Mr. Blackman saying I'll take it on a case-by-case basis. You see that -- in writing my decision that I just came out with, I

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC Conference 9

Page 4

didn't feel that it was terribly clear what was agreed to on September 28. But it ought to be clear, and what should be -- there should be standing if the person owns the interest as of the time he sues or if it's a class action there might be another relevant time, and that should establish standing.

Now, if at a later point, if it ever comes a time when the judgment -- there is a judgment and it is being enforced, there may need to be a more refined look at timing to see what is due in the way of interest and so forth. But all I want to do now is to eliminate the confusion and I don't think the September 28 record is terribly clear or as clear as it should be. It may be clear to you. It wasn't so clear to me. I don't see -- there should not be anything but complete clarity as to what constitutes standing and it should be something that I can use in my decisions. There will be successions of law clerks and decision after decision over I'm sure a fairly substantial period of time. It's possible I simply forget what went on in all of this. And that's the reason it should be absolutely clear-cut and simple.

So I would say that standing is established if somebody owns the bonds or the interest at the time of suit or if it's a class action then when -- obviously, the class representative has to own interest at the time of suit. And as far as class members, they will have to show ownership as of some relevant time, but that's for future consideration.

v

MR. CHERNOV: Your Honor, in light of your statement, in this decision --

THE COURT: And I certainly will -- I really -- despite what I wrote here, I think it's absurd to ask you to go back and get a lot of additional documents from your clients.

MR. CHERNOV: I appreciate that, your Honor. My question to your Honor is in light of the decision, how would you like us to proceed?

THE COURT: Well I want to hear, Mr. Boccuzzi, is it satisfactory to simply say there is standing if there is proof of ownership as of the time of suit?

MR. BOCCUZZI: Your Honor, as to that, the agreement -- and we'll live by the agreement, it was clear from Mr. Chernov -- I think we're just talking about these cases -- in the Cilli case, if that's how your Honor wants to proceed, I'm fine with that.

THE COURT: I don't want some special rule for the Cilli case.

MR. BOCCUZZI: Well in terms of pending cases.

THE COURT: I don't want some special rule for pending cases. I wanted to rule, period. And if we have to have Mr. Blackman come up, I'll have as many hearings as necessary and you will waste as much of your time and your client's money as you need to to get a simple rule, but that's what we're going to get.

v

MR. BOCCUZZI: Your Honor I'm on board with the simple rule. I thought the rule we had was simple.

THE COURT: It is not.

MR. BOCCUZZI: If I may, your Honor, if I can write to the court either today or tomorrow to confirm.

THE COURT: I want some commitment right now and if you have to go to the phone, go to the phone. If Mr. Blackman has to come up, he'll come up. I don't want anymore of this.

MR. BOCCUZZI: So what the court is proposing is that present proof of current ownership --

THE COURT: As of the time of suit.

MR. BOCCUZZI: -- as of the time of suit brings the deal -- brings standing.

The only thing I would ask your Honor, if they're acceleration as of the time, if there is a wide gap, can we have proof as of the time they're accelerating the bond?

THE COURT: I don't understand what you're saying.

MR. BOCCUZZI: Under the bond documents, a bond holder decides whether they're accelerating their bond at a certain time and what happens usually in these cases that you accelerate your bond saying I want the principal and all interest going back that's due and then they bring a lawsuit. If there's a gap between the acceleration and the lawsuit, here -- and I don't know if this is what your Honor was seizing on -- there is no proof that they have the bond when they

accelerated; and obviously, they need to own the bond to accelerate it. So if there was some gap here as a period of time, the time of suit is not the same as the time of acceleration.

THE COURT: I don't understand what you're saying.

MR. BOCCUZZI: When they send the letter accelerating the bond, they have -- there is no proof in the record and the in the Cilli case -- in other cases there is -- that they own the bond as of that time. And so --

THE COURT: As of what time?

MR. BOCCUZZI: When they accelerated the bond.

THE COURT: Who accelerated?

MR. BOCCUZZI: The holder of the beneficial interest. That's usually what prompts the lawsuit.

They send the notice of acceleration saying I am demanding -- it's the standard acceleration clause, principal and past interest and then they'll bring a lawsuit when they're not paid the principal and past interest. Sometimes there's a gap, as there was here, and I thought this is one of the things your Honor was getting at. But I see you were more -- take a step back on September 28, your Honor said there were two things, the deal as to the standing and your Honor's own standards as to what you will apply to get comfortable they own it.

If your Honor just wants to look at proof of current

ownership, that's your Honor's decision and that's how you've been ruling on these cases. The deal was a separate issue.

Here they never proved that they owned the bond as of the time they accelerated and that has ramifications for CPLR interest of 9 percent that accrues as of the date of acceleration.

So as I said, in this case, if your Honor wants --

THE COURT: Let's suppose an owner of an interest -- and I guess we ought to be precise. We're talking about interest, right?

63S9CILC.txt

MR. BOCCUZZI: Yes.

THE COURT: An owner of interest accelerates, whatever he has to do, and he's accepted, that he does the proper thing, he still owns the bond, he owns the interest, the interest is still marketable, isn't it?

MR. BOCCUZZI: Yes.

THE COURT: So he sells it. And so somebody buys it. Doesn't the person who buys take -- subject to the -- every right that the purchaser -- that the seller has?

MR. BOCCUZZI: I believe so, yes, your Honor.

THE COURT: Well then what --

MR. BOCCUZZI: But there the right would be whether you're the person who sold it or the person who bought the interest, you would say I am entitled to principal and accelerated interest as of the date of acceleration and then

v

going forward from that statutory interest as well. But you'd have to show that someone owned the bond and accelerated as of that date.

THE COURT: Well, it seems to me that -- I don't think that problem occurs with your clients, does it?

MR. CHERNOV: No, your Honor, it doesn't. For one -- and just to back up a little, if you remember, this whole proof issue to some extent was in lieu of a DTC authorization. A DTC authorization isn't at all necessarily tied into when one accelerates.

Our clients come to us. We, as lawyers, based on our understanding and their proof to us, showing us that they are owner, we accelerate it on their behalf. Never in the four, five years your Honor has had these cases has there ever been a requirement that one of the plaintiffs show ownership as of the date of acceleration.

What your Honor has always required is current proof of ownership, and we've always followed that lead. To go back --

THE COURT: That's what gave -- that's what I was doing and then that -- there was the issue about standing and this appeal.

MR. CHERNOV: But the standing issue and the appeal would not be at all affected -- a DTC authorization just -- and we've obtained those authorizations on behalf of our -- of some

v

of our clients. We obtained it on behalf of Mr. Applestein when we were before your Honor. That authorization doesn't say that he's an owner as of any particular date. It doesn't say he's the owner as of the acceleration date. There is no connection whatsoever between that authorization and the date of the acceleration.

MR. BOCCUZZI: Just to be clear, your Honor, I wasn't proposing that this is required by the standing deal. I was saying just as a matter of proving up ownership -- the standing is a separate thing. In terms -- and if your Honor is rejecting this, then your Honor has rejected it.

But just in terms of proof to the court of the elements of their claim, that proof that you own the bond when you accelerated, it seems to be that -- I thought your opinion might have been getting at that, but if it was just a confusion

over the deal --

THE COURT: It really wasn't.

MR. BOCCUZZI: Then I appreciate, your Honor --

THE COURT: Here's what I would think. All the bonds, other than those which were turned in the exchange offer, are marketable, right?

MR. CHERNOV: Yes, your Honor.

THE COURT: And if a plaintiff in a case wants to sell his bonds, he can sell them. Now what it means is that he has no further cause of action and the new owner would have a cause

of action.

So what I'm trying to get at is there may be events in the way of purchases and sales that affect whether somebody has a cause of action or doesn't have a cause of action. And if somebody has bought an interest and -- from somebody who did the -- took the steps to accelerate, it seems to me the complaint should allege that.

MR. CHERNOV: Your Honor, none of the plaintiffs --

THE COURT: Let me just finish.

MR. CHERNOV: Sure.

THE COURT: You've got possible ways a cause of action could shape up and there -- it seems to me that whatever we establish as far as standing should not try to anticipate every variation that could arise.

The one thing, it seems to me, that has to be is that the person has to own the interest at the time they sue. And presumably if a motion for summary judgment is made and the court isn't told differently, that same person owns the bond at the time the motion is made and the time the motion is granted. And if a judgment is actually entered, if the court doesn't have any notice to the contrary, it's assumed that the person still owns the interest; otherwise, he doesn't deserve the judgment. But all of that is very routine, very standard.

And I go back -- I don't want to be insisting on something that will lead the Republic to go to the court of

appeals again and worry the court of appeals about standing, but I do not see that there is any need for anything other than ownership at the time of suit to establish standing. And I think anything else we introduce could cause confusion to litigants. It could cause confusion to me and, you know, the law clerks coming on and so forth. And in a way that's what's happened here.

There was this complication that, at least in my view, on the September 28, 2005 hearing, and what I wanted to do today is to eliminate that.

So what I'm going to do is to say that unless I hear promptly to the contrary -- and I mean within 24 hours -- it will be the rule of this court that standing is established, and proof of standing is established by showing ownership at time of suit. And the opinion of March 20, 2006 will be -- I will consider that you're making a motion for reconsideration and the motion is granted, and I'll issue an amended ruling accordingly.

MR. CHERNOV: Thank you, your Honor.

MR. BOCCUZZI: Your Honor --

THE COURT: And -- I'm just repeating myself, but the different variations that might come up as to whether a particular plaintiff has bought a bond or somebody else has accelerated, that has to be pleaded. But we don't have to establish -- have standing rules which take into account all

the possible circumstances that might arise in this litigation. Okay.

MR. CHERNOV: Thank you.

MR. BOCCUZZI: Thank you, your Honor.

May I ask, going forward in these cases, we have been now getting proof of purchase provided to us by the plaintiffs, and again separate and apart from standing.

In terms of the Republic's understanding and the Court's understanding, so we can bring it to your attention if there are permutations, can we continue with the practice where plaintiffs are producing -- not for this case but for future cases where we have been doing it, where they do provide us with that proof of purchase?

Because right now the pleadings, the way they're cast, it just says Mr. X owns a bond. There's nothing about the date they purchased it. There's nothing about in terms of how that relates to acceleration.

So if they just provided it, a simple document that shows when they purchased and then if there's something weird, that's what litigation is about, we could bring it to the court's attention.

THE COURT: What form do they provide this? As part of their pleading?

MR. BOCCUZZI: You mean the document or the -- right now they file their complaint. The complaint generally just

says Mr. X owns a bond. It doesn't talk about when a person acquired it. Then we serve document demand. They don't respond. They object to those, and then they make a motion for summary judgment. And what we see are summary judgment papers that attach a piece of current ownership, proof of that, if it is, and then also a proof of purchase.

And all I'm saying is since they've gotten into this mode because of the agreement wherein these cases going forward, they give us the proof of purchase -- I'm not saying it's standing, your Honor. I'm just saying why not just keep having them produce it. There is no reason why they can't.

This way if there is some strange way a claim is shaped up, we have some basis to look at it and present it to the court if there is an issue.

THE COURT: In other words, you think that the -- as people are making motions now, they read the September 28 minutes, they are aware of what's required.

MR. BOCCUZZI: I know that's what Mr. Chernov is doing. He's here.

MR. CHERNOV: That's accurate, your Honor. Since September 28 when we've moved for summary judgment we have provided the Republic --

THE COURT: On new motions?

MR. CHERNOV: New motions. We've provided the Republic with a current account statement and proof of

63S9CILC.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC Conference 20

acquisition of the bonds.

THE COURT: Forget what has been said. What do you recommend as the format to go forward?

MR. CHERNOV: Your Honor, I recommend just what your Honor found. Current ownership. That's what matters, how these people acquired it and when they acquired it. If they acquired it in 1996 or they acquired it in 2001 should not be required.

My feeling is that it often causes the plaintiffs whom we represent a burden. Not all these people have records -- they don't all do like I do and keep their securities nicely ordered. They have to go to the brokerage houses. They have to get them. They have to request them. Some of the brokerage houses are out of business, and it hasn't been easy for them to get them.

I don't think they serve a useful purpose. I don't think they should be necessary, but obviously, that was how I understood your ruling and we acted accordingly.

But if you're asking for my statement as to what I believe should be required, I do not believe they should be required. I believe that all that is necessary is a current account statement as your Honor stated and for the reasons your Honor stated.

THE COURT: Let's suppose -- let's just go through this. Let's suppose somebody bought the interest before

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC Conference 21

December 24, 2001, before the default, and still owns that interest. Now, I take it normally that person would affect an acceleration.

MR. CHERNOV: Correct, your Honor. What happens is they retain us and on behalf of the plaintiffs we have then accelerated, as counsel on their behalf.

THE COURT: Okay. And if that happens it's pleaded in the complaint?

MR. CHERNOV: Correct, your Honor.

THE COURT: If it hasn't happened, it can't be pleaded?

MR. CHERNOV: Correct again.

THE COURT: And if they have bought before December 24, 2001, and if there's been an acceleration, then principal is due and all the unpaid interest is due?

MR. CHERNOV: Correct.

THE COURT: And that unpaid interest would be whatever was involved in the original default and going forward, right?

MR. CHERNOV: Correct.

THE COURT: Now, if somebody buys let's say on January 1, 2003 and let's suppose the prior owner didn't accelerate -- the prior owner just held the bond and knew that the interest wasn't being paid and sold at a discounted value, that person has a cause of action, right?

MR. CHERNOV: Correct.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

63S9CILC Conference 22

THE COURT: An owner of the bond still has a contract

Page 10

with the Republic and the contract is not being fulfilled.

Now the person can come to you and come to any attorney; and if there's a right to accelerate, there's still a right to accelerate?

MR. CHERNOV: Correct.

THE COURT: And thus, if that right to accelerate is properly exercised, the principal is due and all unpaid interest?

MR. CHERNOV: Correct.

THE COURT: Going back to December 24, 2001?

MR. CHERNOV: Exactly.

THE COURT: Now, if somebody sues -- let's say files suit July, 2003, all they have to plead is that -- they have to plead ownership, right?

MR. CHERNOV: Correct.

THE COURT: If they want to recover principal, they've got to plead acceleration, right?

MR. CHERNOV: Correct.

THE COURT: And as far as interest, they simply plead the interest as unpaid since December 24, 2001?

MR. CHERNOV: Correct.

THE COURT: That's their cause of action?

MR. CHERNOV: Correct.

THE COURT: And if they move for summary judgment, it

v

seems to me that -- forgetting standing for a minute -- that's all they have to show for summary judgment?

MR. CHERNOV: That's our position, your Honor.

THE COURT: They have a cause of action.

If those things are done, they've got a cause -- if they bought, there's acceleration and if -- if they bought, there's acceleration and of course there was the default, then they have a cause of action and they can get summary judgment on principal and unpaid interest?

MR. CHERNOV: Correct, your Honor.

THE COURT: Just a minute. (Pause)

Literally -- this was the subject of the appeal -- the bond owners have to sue. They have standing. And without anything more, although the interest might have a cause of action in the sense we've just talked about, it's the bond holders who have the authority to sue, correct?

MR. CHERNOV: Correct.

THE COURT: Unless they authorize the interest holders to sue?

MR. CHERNOV: Correct.

THE COURT: That's the technical way it stands?

MR. CHERNOV: Right.

THE COURT: Now --

MR. CHERNOV: That's the question that the court left open. The court didn't rule on it and your Honor never ruled

v

on it.

THE COURT: On what?

MR. CHERNOV: Whether beneficial bond holders have standing to sue under the terms of the physical agency agreement.

I believe the court of appeals -- and I haven't gone

back and looked at it and I'm sure Mr. Boccuzzi can correct me -- I don't know that the court of appeals actually ruled that only the depository trust company and it's nominee, Cede & Co., have standing.

I believe what the court ruled was that it wasn't sufficiently developed in the record and sent it back to your Honor for further consideration.

THE COURT: I think that's correct.

MR. CHERNOV: I don't know if there was an explicit statement by the court.

THE COURT: The questions that were left open -- I can't remember but they were a little bit not so basic. They were a little bit kind of -- but you're technically right, but basically the message was that if there wasn't some kind of a blanket waiver or something, the structure -- the written structure has to obtain.

Now it seems to me what should have been done, on the remand, when we realized that the bond owners were never in this world going to bring suit, what we should have done is to

v

say all that's necessary to prove standing and get by that point is to show you've got a cause of action. And instead we got into this somewhat complicated rigmarole on September 28.

Now, I don't want to cause further confusion and introduce a change which would cause confusion, but I do not think -- these cases keep being brought and so forth, so we've got a long road -- a lot ahead of us and it seems to me even though there is a change from what was said on September 28, 2005, it really -- we ought to go back and have it as simple as possible. If somebody wants to show the time of purchase when they file a motion for summary judgment, they can do that. And if there's some agreement between Cleary Gottlieb and plaintiff's counsel to do something simply by agreement, they can do that.

But as far as this court is concerned, it seems to me we ought to have a rule that what is necessary to show standing is simply to show a cause of action. And that means ownership, somebody accelerated, if there's a request for principal, and of course the interest follows as simply from the ownership. And that's what I'm going to say.

And again, I'll assume unless there's an objection that I hear about within 24 hours, that's the rule from here on out.

If, as a matter of some convenience, if counsel for plaintiffs and counsel for the Republic want to agree to have

v

other documentation in connection with a motion for summary judgment, you can do whatever you want. But I want it as simple as possible.

So, the motion for reconsideration is granted. And the -- a new opinion will be issued amending so much as necessary to show that there is the -- the motion is granted.

MR. CHERNOV: Thank you, your Honor.

THE COURT: Thank you.

(Adjourned)

63S9CILC.txt

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I

Page 13