1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   In re
                        02 Civ. 4124 (TPG)
 4   THE REPUBLIC OF ARGENTINA

 5   ------------------------------x
                        New York, N.Y.
 6                      March 5, 2004
                        10:50 a.m.
 7   Before:
               HON. THOMAS P. GRIESA
 8                      District Judge

 9

10        APPEARANCES

11   DREIER LLP
        Attorneys for Plaintiffs
12        499 Park Avenue
          New York, New York  10022
13        (212) 328-6100
        BY:  MARK S. DREIER, ESQ.
14        JOEL A. CHERNOV, ESQ.

15   GUILLERMO A. GLEIZER, ESQ.
        Attorney for Plaintiffs
16        130 Water Street, Suite 4K
          New York, New York  10005
17        (212) 683-0233

18   CLEARY, GOTTLIEB, STEEN & HAMILTON
        Attorneys for Defendant
19        One Liberty Plaza
          New York, New York  10006
20        (212) 225-3999
        BY:  CARMINE D. BOCCUZZI, JR., ESQ.
21        JONATHAN I. BLACKMAN, ESQ.
          MARIA McFARLAND, ESQ.
22        WESLEY H. KELMAN, ESQ.

23   BOLATTI & GRIFFITH
        Attorneys for Correo Argentino, S.A., and Trustee
24        32 Old Slip
```

25      New York, New York 10005
          (212) 363-3780
BY: SYLVIA L. BOLATTI, ESQ.

2

1       (Case called)

2       THE COURT: I would like to talk about some broad

3   scheduling matters. The one principal privilege I exercise as

4   a senior judge is I take an extra month of vacation in the

5   summer, so I am gone June and July. This invariably works out.

6   Lawyers in cases know that and reschedule around that.

7       I think in this case we have to think about what is

8   coming up and work around that. If there are things that

9   cannot avoid coming up in that time period, we have ways to

10  handle that. We have Part I judges to take care of emergency

11  matters. We have undoubtedly a magistrate judge who is

12  available who will be called in on this case or in these cases.

13      I don't need to have any further discussion of that

14  now. Although June seems a long way away in one sense, it is

15  like tomorrow in another sense. That is the way time goes. So

16  let's just leave that subject for now. Maybe we can discuss it

17  as time goes on.

18      We have several cases that need attention today, and

19  there are certain cases where motions for summary judgment are

20  pending. There are issues about standing and issues about

21  ownership. I would like to discuss the standing issue and hear

22  what anybody would like to offer as far as argument in addition

23    to what is in the papers. The floor is open.

24        MR. BOCCUZZI: Your Honor, Carmine Boccuzzi for the

25    Republic of Argentina. I think the problems are pretty much

                                    3

1    laid out in the papers. I would just draw your Honor's

2    attention to the language that we are relying on in the FAA,

3    which is on page 7.

4        What we are talking about here is a global security.

5    These lawsuits are based on the fiscal agency agreement, and

6    that is the document that is claimed to have been breached. If

7    your Honor applies the recently decided New York state cases,

8    the MacKay Shields case and the Oak Tree cases, those make very

9    clear that in this type of situation, where you have a

10    registered holder designated in the relevant agreement or

11    contract as the sole owner, then that registered holder is the

12    party with standing to pursue any claim, including claims based

13    on failure to make payments due under the contract.

14        That is really the issue. It is a simple straight-

15    forward application of the contractual language and there is

16    New York precedent, including by the First Department in New

17    York. That is what the basis of the motion is.

18        Plaintiffs seem to rely primarily on some prefatory

19    language that is found in the FAA on page 7 under the language

20    that says the registered holder is the sole owner for all

21    purposes under the agreement. They argue that because there is

22  a statement about the republic understanding that a depository

23  might authorize someone to do something, that the depository is

24  otherwise the sole party who can take the action, that means

25  they have standing to sue.

4

1       This language, of course, does not purport to undercut

2   the rest of the documentary language that we rely on.

3   Moreover, none of these plaintiffs, your Honor, even purport to

4   have an authorization for the depository.  So the situation is

5   that language doesn't help the plaintiffs.

6       The other expects of these two cases, we raise the

7   Etevob and the Franceschi case, which are cases that involve

8   each having about 28 to 30 plaintiffs.  As you have seen in our

9   papers that oppose plaintiffs' motion for summary judgment,

10  many of them failed to make a prima facie showing that

11  sufficient to get summary judgment that they are even

12  beneficial owners of the interests in the bonds that they claim

13  to own.

14      So the standing provision which focuses enforcement in

15  the registered holder, which, as the registered holder, has the

16  global security and sits on top of the system of book entries

17  that goes through the participant, through the participants'

18  participants, and then downward ultimately to the beneficial

19  owner, that is the best entity to be involved in this process.

20      As I said, your Honor, none of these folks, who

21  otherwise, as you see from the papers, have really failed to

22  establish the beneficial ownership, none of them has even

23  purported to get the authorization of this registered holder.

24  That is the basis of the motion.

25      There is a similar motion made in the case involving

5

1  Mr. Applestein in the Province case. Again it is also relying

2  on the MacKay Shields and Oak Tree cases.

3      THE COURT: Who are the depositories? What do they

4  do?

5      MR. BOCCUZZI: The depository is an entity like

6  Depository Trust Corporation, DTCC, and they are an entity that

7  holds the global security. They are identified in the

8  documents as holding the global security. They are the entity

9  that in turn has participants --

10      THE COURT: Wait a minute. Let's take the United

11  States. What company is it?

12      MR. BOCCUZZI: The Depository Trust Company, your

13  Honor, DTC.

14      THE COURT: What do they do?

15      MR. BOCCUZZI: They are a corporation that is involved

16  in -- they were established in the seventies, and they are

17  there to operate and be involved in overseeing the system that

18  has registered securities of this type.

19      THE COURT: That is a little vague.

20    MR. BOCCUZZI: They have participants, your Honor.

21  Participants are financial institutions.

22    THE COURT: So you have the Depository Trust Company.

23    MR. BOCCUZZI: Right.

24    THE COURT: Let's say the republic issues a bond, it

25  issues it to the Depository Trust Company.

6

1    MR. BOCCUZZI: They issue a global security, yes, and

2  the Depository Trust Company is the registered holder of that

3  global security.

4    THE COURT: What is meant by a global security?

5    MR. BOCCUZZI: It is opposed to something like a

6  bearer bond. The global security is a security --

7    THE COURT: Is it a bond?

8    MR. BOCCUZZI: Yes. It is an obligation of the

9  republic.

10    THE COURT: Is it a bond?

11    MR. BOCCUZZI: Yes, it is a bond.

12    THE COURT: It is a bond?

13    MR. BOCCUZZI: Right.

14    THE COURT: So the Republic of Argentina issues a

15  bond. You are saying it issues the bond to the --

16    MR. BOCCUZZI: The registered holder.

17    THE COURT: The Depository --

18    MR. BOCCUZZI: Trust Company.

19    THE COURT:  -- Trust Company.  Why does it issue it to

20    the Depository Trust Company?  The Depository Trust Company is

21    not paying for the bond, right?

22    MR. BOCCUZZI:  Right.

23    THE COURT:  So how does the Depository Trust Company

24    know to get a bond issued to it?

25    MR. BOCCUZZI:  Pursuant to the fiscal agency agreement

7

1    between the republic and the fiscal agent, that talks about

2    what the bonds or series of bonds are going to be.  The

3    Depository Trust Company, its job is to hold the global

4    security.

5    THE COURT:  I asked you a specific question.  Some

6    individual or company decides to buy some Argentine bonds.  How

7    do they buy the bonds?

8    MR. BOCCUZZI:  They could call their broker.

9    THE COURT:  They call their broker.

10    MR. BOCCUZZI:  Right.

11    THE COURT:  Their broker calls who?

12    MR. BOCCUZZI:  Their broker would go into the market

13    and find a seller of the bonds and purchase the bond.

14    THE COURT:  Who is the seller going to be?

15    MR. BOCCUZZI:  It could be anyone, your Honor.  These

16    bonds trade in the secondary market.

17    THE COURT:  So somebody else who is owner of bond,

18   right?

19        MR. BOCCUZZI:  Right.

20        THE COURT:  Then the person wants to buy or become the

21   owner of these bonds, right?

22        MR. BOCCUZZI:  Correct.

23        THE COURT:  The Depository Trust Company is not in the

24   market, is it?

25        MR. BOCCUZZI:  Not that I know of, your Honor.

                              8

1        THE COURT:  Of course not.

2        MR. BOCCUZZI:  But it is sitting on top of the market

3   in terms of when that sale happened.

4        THE COURT:  Sitting on top doesn't mean anything.  The

5   Depository Trust Company is not in the market selling or

6   buying, right?

7        MR. BOCCUZZI:  Correct.

8        THE COURT:  So somebody sells some bonds.  These are

9   registered bonds and not bearer bonds?

10        MR. BOCCUZZI:  Correct.

11        THE COURT:  Now, these bonds are registered in whose

12   name?  The Depository Trust Company's name?

13        MR. BOCCUZZI:  Yes.

14        THE COURT:  Obviously, the seller and the buyer, they

15   employ their brokers and the brokers are handling it.  What do

16   the brokers do?  What does the broker for the seller do after

17  the sale?  Does the broker notify the Depository Trust Company

18  or what?

19      MR. BOCCUZZI:  It depends.  If the broker itself is a

20  participant -- and "participant" is the term of art for people

21  who are participants in Depository Trust Company -- then that

22  participant, the next link in the chain would be the Depository

23  Trust Company.  So that book entry would be notified to the

24  Depository Trust Company.

25      THE COURT:  What do you mean a book entry would be

                              9

1  notified?

2      MR. BOCCUZZI:  The fact that there has been a transfer

3  of beneficial interest would have to be informed to the

4  Depository Trust Company.  It is just a series of book entries,

5  your Honor.

6      THE COURT:  I understand.  In other words, certain

7  brokers are participants.

8      MR. BOCCUZZI:  Yes.

9      THE COURT:  They are listed with the Depository Trust

10  Company.

11      MR. BOCCUZZI:  Correct.

12      THE COURT:  What is the role of a participant?

13      MR. BOCCUZZI:  They are just people, financial

14  institutions, who are in the market trading in these bonds or

15  themselves have customers, broker-dealers, who themselves are

16    trading in the bonds.  The system is just meant to

17    facilitate —

18         THE COURT:  Wait a minute.  They are registered or

19    listed with the Depository Trust Company as brokers who are

20    trading in the bonds, right?

21         MR. BOCCUZZI:  Correct.

22         THE COURT:  Do they trade in their own name or do they

23    represent other people?

24         MR. BOCCUZZI:  They would be trading in their own

25    name.

10

1          THE COURT:  So they trade in their own name.

2          MR. BOCCUZZI:  And they have their own books that

3    would trace to their customers for whom they are trading.

4          THE COURT:  You said they trade in their own name.

5    Now, you mention customers.  I suppose they do both.

6          MR. BOCCUZZI:  Right.  For example, there is a broker-

7    dealer and he may have customers.  So he may be trading in his

8    own name.  But the position that is reflected, for example,

9    with the DTC would be in the name of the participant.  Some of

10   it may be for its own account and some of it may be

11   beneficially owned by the next —

12         THE COURT:  So the Depository Trust Company doesn't

13   even list the beneficial owners at all, does it?

14         MR. BOCCUZZI:  That is by and large correct.

15      THE COURT:  They just list participants?

16      MR. BOCCUZZI:  Correct.

17      THE COURT:  And it is the participants who actually

18  list the beneficial owners?

19      MR. BOCCUZZI:  They may or they themselves may have

20  another layer between themselves and the beneficial owners.

21      THE COURT:  What layer would that be?

22      MR. BOCCUZZI:  For example, it could be a participant,

23  which is Lehman Brothers, and then he could have someone, a

24  broker-dealer, under them.  And that broker-dealer may be

25  trading for the ultimate beneficial owner.  So there just could

11

1  be different layers, your Honor, in terms of what is between

2  the beneficial interest owner and the registered holder, the

3  Depository Trust Company.

4      THE COURT:  So you have conceivably these layers:  The

5  Depository Trust Company, the participants, other brokers who

6  are dealing with the participants, and the beneficial owners.

7  Conceivably those layers; it could be a little less.  Anyway,

8  that is what could happen.

9      Now, if an interest payment is made, who does the

10  republic make it to?

11      MR. BOCCUZZI:  The fiscal agent, Bankers Trust under

12  the fiscal agency agreement.  That agent pays the depository.

13      THE COURT:  So there is a fiscal agent of the bank,

14   and the bank pays the Depository Trust Company, and then it

15   goes on through the chain?

16        MR. BOCCUZZI:  Exactly.

17        THE COURT:  And gets to the beneficial owner.

18        MR. BOCCUZZI:  Yes.

19        THE COURT:  What is the language that prevents the

20   beneficial owner from suing?

21        MR. BOCCUZZI:  If you look, your Honor, on page 7 of

22   the fiscal agency agreement, that first full paragraph that

23   begins with the language "So long as the depository for global

24   security or its nominee is the registered owner of such global

25   security, such depository or such nominee, as the case may be,

12

1   will be considered the sole owner or holder of the securities

2   represented by such global security for all purposes under this

3   agreement."

4        It goes on to state that beneficial owners are not

5   entitled to having a definitive note in their name and will not

6   be considered the owners or holders thereof under such

7   securities or this agreement.

8        Then, the next sentence says, "Accordingly, each

9   person owning a beneficial interest in a global security must

10   rely on the procedures of the depository for such global

11   security and, if such person is not a participant, on the

12   procedures of the participant through which such person owns

13  its interest to exercise any rights of a holder under the

14  securities or this agreement."

15      The next sentence is the language that plaintiffs have

16  relied on to rebut what precedes it.

17      THE COURT:  Certainly the governing instruments

18  contemplate the possibility of legal action.  That is why there

19  is a waiver of sovereign immunity.  I think there is a choice

20  of law, there is an agreement to jurisdiction, all the things

21  that we covered in the earlier summary judgment motions.

22      It would be impossible to create the instruments here

23  without providing for the possibility of legal action.  Who can

24  take the legal action?

25      MR. BOCCUZZI:  All the rights in terms of the fiscal

13

1  agency, your Honor, are couched in terms of the holder, and the

2  holder is the registered holder, who is considered the sole

3  registered holder under the contract.

4      THE COURT:  Is the Depository Trust Company filing any

5  lawsuits?

6      MR. BOCCUZZI:  We have not heard from the

7  depository --

8      THE COURT:  Is the Depository Trust Company

9  participating in any conferences about a debt workout?

10      MR. BOCCUZZI:  I am not aware of, that your Honor.

11      THE COURT:  No, of course, not.  The Depository Trust

12   Company makes a little dab of money by performing ministerial

13   functions.  They have no interest that would possibly cause

14   them to go to a meeting about a debt workout or even consider

15   the subject.  They would have no interest in filing a lawsuit.

16       what you are talking about is giving them the sole

17   right of action, and that will never happen.  They will never

18   sue.  They will never sue.  Never heard of it.

19       What is really important is the last clause, the last

20   sentence, beginning "The republic understands."  That is the

21   important part of that whole paragraph for our purposes.  What

22   it does say is that the republic understands that the

23   depositories and the participants will allow the beneficial

24   owners to sue.  That is the important part of this paragraph.

25       MR. BOCCUZZI:  Your Honor, that has not happened here.

14

1   There has been no showing that there has been any

2   authorization.  This is relevant.  I understand the Depository

3   Trust Company is not the one --

4       THE COURT:  I am sure that that can be accomplished.

5   If the Court called the Depository Trust Company into court, I

6   am sure they would be quite upset that they had to pay a lawyer

7   to come to court, but they would have to.  And I think on the

8   spot we would get as many authorizations as necessary.  It

9   would just be done.  They have no interest in doing it or

10   blocking it.

11    MR. BOCCUZZI:  Your Honor, the language that you cite

12  to refers to the participants holding the relevant interest to

13  take such action.  In other words, the Depository Trust Company

14  does have an interest in making sure that there is an accurate

15  bookkeeping up and down the chain of who actually is the

16  beneficial owner.

17    THE COURT:  They have no interest in engaging in

18  expensive litigation, and they won't ever do it.  You know that

19  perfectly well.  Have you ever talked to them about the

20  subject?

21    MR. BOCCUZZI:  Your Honor, I have not.

22    THE COURT:  No, of course not.  You know what they

23  would say if Cleary Gottlieb called up and said, look, we

24  represent the Republic of Argentina and we are going go into

25  court and say that you are the only people that can file suit,

15

1  what can we really represent to the court about what you will

2  or will not do, we would like to file an affidavit providing

3  the court with information of a practical nature, and would you

4  like to give us an affidavit saying what your intention is

5  about suing on all these defaults?

6    Did you contact them and try to obtain such an

7  affidavit so you could inform the court of what in practical

8  fact would happen with the depository?  Did you do that?

9    MR. BOCCUZZI:  No, your Honor.

10      THE COURT:  Of course you didn't, because you knew

11   what you would find out.

12      MR. BOCCUZZI:  If I may, your Honor.  In terms of the

13   Province case, Mr. Applestein contacted through his participant

14   the DTCC.  So what happens here is there is a verification

15   function that DTC plays, and this is relevant.  If looked at --

16      THE COURT:  That is another issue.

17      MR. BOCCUZZI:  The issue is there is a letter from

18   DTCC to the participant and from the participant to Mr.

19   Applestein, so there is a role.  That is authorizing the suit,

20   which at the very least is what this language references.

21      THE COURT:  Maybe what we need to do is to have a

22   procedure whereby Cleary Gottlieb -- you are the one raising

23   the point.  It seems to me the burden should be on you to

24   arrange the details.

25      MR. BOCCUZZI:  Your Honor, the point is proof of
16

1   beneficial ownership.  That is the plaintiff's burden.  The

2   plaintiffs have to show.  They are stating here, your Honor, we

3   want a judgment for X million dollars.

4      THE COURT:  Maybe it shouldn't be placed on Cleary

5   Gottlieb.  Maybe I will just issue a court order having them

6   come in.  Do you suppose they could come in in a half an hour?

7   Somebody could come in.

8      MR. BOCCUZZI:  In terms of coming in in a half hour, I

9  am just not sure what you would want them to --

10      THE COURT:  Where are they located?  Are they down on

11  Wall Street?

12      MR. BOCCUZZI:  They are in New York, yes, your Honor.

13      THE COURT:  Where?

14      MR. BLACKMAN:  They are down on Water Street.

15      THE COURT:  That isn't very far.  We could adjourn

16  until they are here.  I am sure they would sign any one you

17  want them to sign.  Do you want to go through that?

18      MR. BOCCUZZI:  No, your Honor.

19      THE COURT:  Of course not.  We are not going to do a

20  lot of foolishness.  We are going to get down to practical

21  fact.  The fact is that these beneficial owners are entitled to

22  sue.  If there are some formalities that have to be carried

23  out, they can be easily carried out, and that's that.  That

24  solves the issue of standing, and that is all there is to it.

25  That is the end of it.

17

1       MR. BOCCUZZI:  Yes, your Honor.

2       THE COURT:  If you want to insist on formalities, we

3  will have all the formalities, and the question will be who

4  will pay the cost of getting those formalities accomplished.

5  Anyway, we won't worry about that now.  We take care of the

6  formalities and that can be agreed upon and that is that.

7       Next question:  Ownership.

8        MR. BOCCUZZI: Your Honor, we have raised an issue as

9   to the showing on summary judgment that these folks have done.

10   They started with a lawyer's affidavit, which is proof of

11   nothing. Since then, there have been a variety of affidavits.

12        There are discrepancies in terms, for example, of the

13   amount pleaded and the amount that is shown on the brokerage

14   statement that was submitted. It just doesn't tie together in

15   many places.

16        The burden has been on us, and I think we have met the

17   burden in terms of summary judgment to point out the

18   discrepancies in the failures of proof. That is really the

19   issue.

20        THE COURT: The issue of ownership is a real issue,

21   not something that can be passed over lightly. Let's take it

22   case by case. I know on Kalbermann I denied the motion for

23   summary judgment because there was an issue of ownership. So

24   that is where we need to spend some time.

25        MR. CHERNOV: Can I be heard, your Honor, on Mr.

18

1   Kalbermann?

2        THE COURT: Yes. You represent?

3        MR. CHERNOV: Your Honor, my name is Joel Chernov. I

4   am with the law firm of Dreier LLP, and we represent Mr.

5   Kalbermann.

6        THE COURT: All right.

7    MR. CHERNOV:  Your Honor surely did deny Mr.

8    Kalbermann's first motion, finding that the evidence was

9    insufficient.  Your Honor, with all due respect, we believe

10   there was sufficient evidence before the Court, and we made a

11   motion for reconsideration or reargument and submitted a new

12   declaration that hopefully clarified the original evidence and

13   supplemented that evidence.

14        If I can direct the Court's attention to that

15   evidence, I believe you will see that it is plenty clear that

16   Mr. Kalbermann does own the bonds he claims to own.  First, I

17   don't know if your Honor has before you Mr. Kalbermann's

18   accounts.

19        THE COURT:  Mr. Boccuzzi, he has a good point in that

20   on the issue of ownership one satisfactory way to deal with

21   that would be to go through the process which is outlined on

22   page 7 of the fiscal agency agreement.  I was trying to dispose

23   of the standing issue quickly, which I think ought to be done.

24   But there are requirements of these instruments, and I am

25   certainly not ready to say the instruments don't have to be

19

1    complied with.  I think compliance could be easy and it should

2    be easy.  And it should be done with a minimum of expense.

3        Is there not a requirement to go through the

4    procedures talked about in the fiscal agency agreement?  Your

5    client is suing --

6     MR. CHERNOV: Mr. Kalbermann is suing the republic.

7     THE COURT: What about those procedures? The thing

8     that does strike me is Mr. Boccuzzi's idea that -- if those

9     procedures are complied with, then that is a very sure way of

10    resolving the issue of ownership. If they have to be complied

11    with, why not do it and then not fight about whether one

12    particular piece of evidence is OK or not?

13    MR. CHERNOV: Your Honor, I don't believe complying

14    with this proceeding would actually solve the problem.

15    THE COURT: Let's go back. Don't you have to comply

16    with the procedures?

17    MR. CHERNOV: Your Honor, we submit that you are

18    exactly correct, that the paragraph you pointed to means that

19    people do not need to go get authorization. It means that

20    everyone understood the way the industry works is that you

21    don't need to go get authorizations.

22    THE COURT: I read it another way. Am I wrong?

23    MR. CHERNOV: I read it, your Honor, that the republic

24    understands that under existing industry practice, if we went

25    out and asked for the authorization, we would be given it or

                                    20

1     DTC would give it to Lehman Brothers, for example, and then

2     Lehman Brothers would give it to the beneficial holder. But it

3     is understood. It is not something that has to be done. DTC,

4     as you said, has no interest in having everyone call them up

5  and go through this process.

6       THE COURT: Let's read the sentence, could we?

7       MR. CHERNOV: Surely.

8       THE COURT: "The republic understands that under

9  existing industry practice, if the republic requests any action

10  of holders "-- that language is irrelevant.

11      MR. CHERNOV: Correct.

12      THE COURT: Let's start again. "The republic

13  understands that under existing industry practices, if an owner

14  of a beneficial interest in such global security desires to

15  take any action which a holder is entitled to take under the

16  fiscal agency agreement, the depository for such global

17  security would authorize the participants holding the relevant

18  interests to take such actions, and the participants would

19  authorize beneficial owners, owning through such participants,

20  to take such action or would otherwise act upon the

21  instructions of beneficial owners holding through them."

22      Mr. Boccuzzi is certainly correct that the earlier

23  part of the paragraph talks about the depository being the sole

24  owner and being the sole party who can take action, and so

25  forth, does it not?

21

1       MR. CHERNOV: It does, your Honor. But if you read

2  the entire agreement, you will see that they repeatedly

3  throughout the agreement reference the registered holder. When

4  they wanted to talk about the registered holder, they talked

5  about the register holder.  They talked about that repeatedly.

6  In the jurisdiction paragraph, though, notably they don't use

7  the word "registered holder," they only use the word "holder."

8       They also talk in the agreement about aggregating the

9  interests of the holdings, that 25 percent of the holders can

10  accelerating rate and that acceleration can overridden by other

11  percentages of holders.

12       THE COURT:  You are saying holders as used in two

13  senses.

14       MR. CHERNOV:  Exactly, your Honor.  This

15  interpretation that the republic is now putting before the

16  Court doesn't square with what the document intended, and it is

17  the paragraph that you pointed to that shows the true intent.

18       What also shows the true intent, your Honor, is that

19  we have now been before you for the better part of two years

20  and this argument was never raised.  The only reason they are

21  raising it now is as a last straw to once again try to stop

22  these lawsuits.

23       This paragraph clearly provides that holders,

24  beneficial owners, have a right to bring suits and they have

25  that right without going back each time to DTC and trying to

22

1  get DTC to give authorizations.  DTC says it is understood that

2  if someone went and asked, they would get it.

3    With respect to the proof problems, this really

4    doesn't address the proof problems. The proof problems is DTC

5    doesn't even know, your Honor, as you recognize, who holds

6    what. DTC has no knowledge. The person who has knowledge is

7    either the participant who sells to the beneficial owner --

8    THE COURT: The broker.

9    MR. CHERNOV: That's right, the broker. The broker

10   knows who has it. So if we get an authorization from DTC, that

11   is not going to help our proof problem. Our proof problem has

12   to be addressed by the broker.

13   That is what we have done, your Honor. We have given

14   you the account statements from the broker, we have given you

15   letters from the brokers. The issues they are raising with

16   respect to the proof are things such as the names cut off at

17   the top.

18   Now, they say the names cut off at the top. But did

19   they call me, your Honor, and say, can I have a new copy of

20   that piece of paper so I can see the top? Did they go to

21   court, where we had the originals submitted, so that they could

22   see the name at the top? No.

23   Again, your Honor, they are making mountains out of

24   molehills. They are raising red herrings.

25   The account statement shows the ownership. The

23

1    letters from the brokers show the ownership. Going back and

2  getting authorization from DTC, who has no idea what beneficial

3  people have or don't have, is not going to help us address the

4  ownership question.

5      THE COURT:  I suppose Merrill Lynch is a participant.

6      MR. CHERNOV:  Excuse me?  Merrill Lynch?

7      THE COURT:  You have submitted account statements from

8  Merrill Lynch.

9      MR. CHERNOV:  Yes.  I don't know each of their

10  participants, but I believe Merrill is a participant.

11      THE COURT:  I guess your argument is that Depository

12  Trust Company isn't going to know.

13      MR. CHERNOV:  Correct.

14      THE COURT:  Merrill Lynch knows, but what you are

15  basically saying is you have enough information from Merrill

16  Lynch in the account statements.

17      MR. CHERNOV:  That is correct, your Honor, and those

18  are the statements we have put before you.  To the extent some

19  of those statements have issues, we can address those issues.

20  But I don't see why we should be going back to DTC to try to

21  help us resolve the issue.

22      THE COURT:  How many bonds did Kalbermann own?

23      MR. CHERNOV:  That is the subject of this lawsuit,

24  your Honor.  He had five separate purchases, but they are three

25  series of bonds.  He has $840,000 worth of bonds that have an

1    interest rate of 12.375 percent, I believe. He has a $90,000

2    bond which is at 11 or 11.5 percent, and then a 100,000 bond.

3        That totals 1,030,000, which is exactly what he sued

4    for when he brought the action. He submitted his account

5    statement which shows that. He submitted a letter from his

6    broker which shows that. He submitted the confirmation slips

7    in the original bank statement that shows that.

8        When we first moved for summary judgment, the republic

9    didn't even contest that ownership. Now they do, saying that

10   one of the CUSIP numbers, your Honor, is wrong. Clearly, it

11   was a clerical error. It has the right maturity date, it has

12   the right interest rate.

13       THE COURT: Help me out. There are a lot of papers.

14   It is all in the papers. He owns three sets of bonds?

15       MR. CHERNOV: Yes. If you look at Mr. Kalbermann's,

16   for example, his July declaration, Exhibit A to that

17   declaration.

18       THE COURT: I have it. 90,000 in bonds. There is a

19   confirmation slip.

20       MR. CHERNOV: There is a confirmation slip that he

21   actually in his declaration submitted his confirmation slips

22   that tie in.

23       THE COURT: So he got a confirmation slip dated trade

24   date 2/14/2000, 90,000 bonds bought, right?

25       MR. CHERNOV: Yes.

1      THE COURT: Then you have 200,000 bonds bought, trade

2   date 4/23/2001, confirmation slip. Then 540,000 4/25/2001,

3   that is a confirmation slip. That is all Merrill Lynch.

4      Was the other one the Prudential?

5      MR. CHERNOV: The Prudential, your Honor, which was a

6   purchase for 100,000 on 5/15.

7      Then, your Honor, if you go to the next exhibit, it is

8   not a confirmation slip but I believe it is Mr. Kalbermann's

9   original statement from Bank Leu, and that shows a purchase on

10   the second item, a purchase of a $100,000 note with an 11

11   percent interest rate and a maturity date of I believe it is

12   October 9, 2006.

13      That is evidenced also, your Honor, if you go to

14   Exhibit C to this declaration. Exhibit C to the declaration,

15   your Honor, has the letter from Mr. Kalbermann's broker, and

16   that is a November 26, 2003 letter. Here he totals those up,

17      And you have the three series of bonds owned by Mr.

18   Kalbermann that again total 1,030,000: The 100,000 bond with

19   the rate of 11 percent, the 90,000 bond with the rate of 11.75

20   percent, and then the 840,000 in bonds with the rate of 12.375

21   percent.

22      He has given the Court the confirmation slips, a

23   letter from his broker, his account statement. We submit, your

24   Honor, that that is sufficient evidence to prove his ownership.

25          MR. BOCCUZZI:  Your Honor, if I might?

26

1          THE COURT:  Yes.

2          MR. BOCCUZZI:  Mr. Kalbermann did come back and re-go

3   over evidence that was before your Honor when your Honor denied

4   his motion for summary judgment because of discrepancies.  We

5   acknowledge that he did clear up some of that.  But there is,

6   for example, still an outstanding discrepancy where he is

7   claiming in his declaration at paragraph 4 to be holding a face

8   amount of $100,000 in principal with a CUSIP number that does

9   not match the CUSIP number on the slip he submitted at Exhibit

10  A to his declaration.  So at least as to that amount, there is

11  a remaining discrepancy.

12          THE COURT:  What is that number?

13          MR. BOCCUZZI:  If you look at his declaration, you

14  will see there is a CUSIP number there for 100,000 face amount,

15  040114GD6.  And then if you go to Exhibit A, the third page,

16  which D527 is the Bates number, the CUSIP number there is a

17  different CUSIP number there on the bottom.  It is 9949L9C.

18  And this is for $100,000.

19          So we don't have a complete match or corroboration

20  between the documentary evidence and what Mr. Kalbermann is

21  claiming.  Of course, the reason why the republic opposed the

22  motion for reconsideration is because of the initial problems

23  your Honor identified in the November 19th denial of summary

24  judgment. They went back, they tried to prove it up, and there

25  is still at least one outstanding discrepancy.

27

1        MR. CHERNOV: Your Honor, clearly that is a clerical

2  error. If you look at Mr. Kalbermann's account statement, it

3  lists —

4        THE COURT: Where is the account statement?

5        MR. CHERNOV: The account statement, your Honor, is

6  annexed to Mr. Kalbermann's original declaration, his

7  declaration of July 8, 2003. Your Honor, I have a copy. If

8  you would like, I could hand it up.

9        THE COURT: What is shown there?

10        MR. CHERNOV: If you look at the last page of the

11  account statement, it shows Argentina, Republic of, global

12  bond. It shows the same bond with the same interest rate, the

13  same maturity date, and it shows that Mr. Kalbermann owns

14  $840,000 worth of that bond or face value amount of that bond.

15  The last page of it, page 3 of 5, it is listed on top.

16        That is also exactly what Mr. Kalbermann's broker told

17  the Court that Mr. Kalbermann owed, and that is annexed as

18  Exhibit C to Mr. Kalbermann's most recent declaration, his

19  December declaration. If you add together the amounts from the

20  confirmation slips, you again get to 840,000. Each of the

21  confirmation slips gives us the same interest rate of 12.375

22  percent, each gives the same maturity date.

23    Your Honor, the republic is not contending they have

24  issued any other bonds with this maturity date and with this

25  interest rate. Clearly that CUSIP number was a clerical error.

                                28

1   The proof is the account statement and the letter from the

2   broker. The fact that the confirmation slip has an incorrect

3   CUSIP number should not be allowed to defeat Mr. Kalbermann's

4   motion.

5        MR. BOCCUZZI: What normally governs, your Honor, is a

6   confirmation slip. The letter that is annexed as Exhibit C to

7   the Kalbermann declaration itself disclaims that it is going to

8   govern in the event of a dispute. So, again, the document that

9   Mr. Chernov is referring to as Exhibit 1, this is the original

10  document that represents a whole bunch of other bonds, and that

11  is the original source of the discrepancy identified in the

12  November 19th denial of summary judgment. So we are just

13  building on evidence that didn't establish what plaintiff says

14  it is establishing.

15       To get back to the point, at the end of the day for

16  that $100,000 nobody knows on this record what CUSIP number it

17  is, and that is the way you track a security. This could be

18  cleared up if you got the chain of letters, potentially cleared

19  up, because then someone would have to drill down on what exact

20  CUSIP number we are talking about.

21       Again, CUSIP number is not a mere formality or detail

22  or something minor.  It goes to the bond that this plaintiff

23  says they have a beneficial ownership interest in.  That is

24  relevant, because at the end of the day that bond will have to

25  be written down at the global level if there is a judgment

                                    29

1  entered.

2        THE COURT:  It is really preposterous to have a

3  courtroom full of people and two sets of lawyers and a judge

4  haggling about these details.  Anybody who has been in the law

5  practice of the kind that is characteristic of the lawyers

6  here, my former law practice, my experience as a judge, we have

7  seen actions brought on behalf of holders of securities.  We

8  have all relied on confirmation slips.  There is almost never

9  any issue.  There are a lot of other issues that you have to

10  worry about, fraud or something like that, but the ownership

11  generally is not a problem.

12        I did deny summary judgment in the first instance.

13  Really, the idea there was to get the situation clarified.  I

14  never really doubted that Mr. Kalbermann owned bonds.  I didn't

15  think that the lawyer was coming in with a balloon full of hot

16  air.  It was a matter of straightening out the accounting and

17  getting things accurate.

18        I am not going to spend a lot of time, as we are doing

19  now, on the ownership issue.  If there is a reasonable set of

20  confirmation slips or declarations or whatever, that settles it

21    as far as I'm concerned.  It settles it because that is the way

22    it is settled in lawsuits that deal with these subjects.

23    Nobody engages in this kind of exercise, and we are not going

24    to have it.

25          I don't know why there is a difference in CUSIP

                              30

1    numbers.  If, as time goes on, it turns out that there is some

2    problem, well, there is a problem.  But I do have a set of

3    confirmation slips, I have an account statement, I have some

4    correspondence.  I'm sorry to have to worry about a problem of

5    addition.  What do you say is the number of bonds he owns?

6          MR. CHERNOV:  A million 30,000 in total.  840 plus the

7    90 plus the 100.

8          THE COURT:  What is it, 840 plus?

9          MR. CHERNOV:  840,000 was one series, plus 100, plus

10    90.

11          THE COURT:  So it is 840 plus 100.

12          MR. CHERNOV:  Plus 90, your Honor.  Which is

13    1,030,000, and that is what he sued for in the complaint.

14          THE COURT:  Again, we have confirmation slips.  I am

15    looking at Exhibit A, Merrill Lynch, 90,000, 200,000, 540,000.

16    Then you have the Prudential for 100,000.  That is 930,000.

17    Where is the other?

18          MR. CHERNOV:  It is the next exhibit, your Honor,

19    which was the Bank Leu statement.

20    THE COURT: I see. That is an additional?

21    MR. CHERNOV: That is the additional hundred.

22    THE COURT: All right. Motion granted.

23    MR. CHERNOV: Thank you, your Honor.

24    THE COURT: Is there any other ownership issue worth

25    talking about, or are we just dealing with matters of detail

31

1    which should be straightened out between the lawyers?

2    MR. CHERNOV: I will be happy to deal with the details

3    with Cleary Gottlieb if your Honor would prefer us to proceed

4    in that manner.

5    MR. BOCCUZZI: Your Honor, I am happy to speak with

6    plaintiffs.

7    THE COURT: We are not going to take up time in this

8    courtroom. what I intend to do is to grant the motions for

9    summary judgment that are pending. Any details about ownership

10    can be resolved in the course of pretrial. But I don't think

11    they will need to be resolved. I think there is sufficient

12    evidence.

13    The standing issue, I engaged in a little rhetoric

14    about having all those procedures followed. Nobody in their

15    right mind is going to tax the parties and the Depository Trust

16    Company and Merrill Lynch, and so forth, with a lot of useless

17    procedures. So I am holding that the beneficial owners have

18    standing.