19      If the republic is going to insist that we get some

20   kind of permission from the Depository Trust Company and from

21   the so-called participants, then that could be done at some

22   stage.  I don't think that the republic and Cleary Gottlieb

23   will really end up wanting to do that.  If they insist on that,

24   I will have to consider who will pay the cost of having that

25   done.

32

1      The other problem I think is the problem of Mr.

2   Gleizer's, the Macrotecnic.  We had better get to that.

3      MR. BOCCUZZI:  Your Honor, just as a housekeeping

4   matter, there was one other motion, I think it just needs to be

5   put on the record, that we had made.  That involved Franceschi.

6      After we had made our initial opposition to summary

7   judgment because of the proof issues, there was more

8   information provided in the next wave by plaintiffs of who

9   bought when and the like.  That led us, the republic, to want

10   to amend the answer to assert -- and I know your Honor has

11   dismissed the affirmative defense in the past, but it is very

12   fact-intensive -- to assert the affirmative defense of

13   champerty, because some of these plaintiffs we learned in

14   subsequent evidence had bought in 2003 and then sued weeks

15   later.

16      THE COURT:  I certainly want you to have your record.

17   The amendment will be permitted.  You need to have your record.

18    MR. BOCCUZZI: Thank you, your Honor.

19    THE COURT: All right. Mr. Gleizer.

20    Before we get to Mr. Gleizer, there is an issue about

21    so-called Brady bonds. What is that?

22    MR. CHERNOV: Your Honor, certain of the plaintiffs

23    whom we represent bought bonds not just under the fiscal agency

24    agreement but under other agreements that also provide for

25    jurisdiction before this court. Those are euphemistically

33

1    known as "Brady bonds." There is another set known as "Yankee

2    bonds" that certain of the plaintiffs hold.

3    THE COURT: Are the instruments the same?

4    MR. CHERNOV: They have certain differences in them,

5    but for purposes of payment --

6    THE COURT: For our purposes.

7    MR. CHERNOV: For our purposes, it is exactly the

8    same. There is a complete waiver of immunity, a complete

9    waiver of jurisdiction.

10    THE COURT: Unconditional obligation?

11    MR. CHERNOV: Unconditional obligation. All those are

12    exactly the same, your Honor.

13    MR. BOCCUZZI: They lack the language that your Honor

14    referenced in terms of the depository would authorize

15    beneficial interest holders to sustain a suit.

16    THE COURT: I will grant the motions on all those

17    cases.

18        Now Mr. Gleizer. Well, I think we had better hear

19    from Cleary Gottlieb first, because Cleary Gottlieb asserts

20    that there are no grounds for this.

21        MR. BLACKMAN: Actually, your Honor, I think you ought

22    to really hear from counsel for the trustee and Correo, Ms.

23    Bolatti. We put in papers, but she in fact does represent the

24    person who does own this account, not the republic. I am happy

25    to speak to some of the other legal issues.

34

1        THE COURT: I will certainly do that.

2        MR. GLEIZER: I apologize, your Honor. Does Mr.

3    Dreier have an interest in this?

4        THE COURT: I am not trying to exclude anybody.

5    Please. I just used you as a shorthand.

6        MR. GLEIZER: But they are not in my motion.

7        THE COURT: What is your problem?

8        MR. GLEIZER: I don't know. They are sitting here.

9        THE COURT: There is plenty of room. There are four

10    empty seats at the front table.

11        MR. GLEIZER: Also, your Honor, they are trying to use

12    the work paid by my clients to obtain this, and they have done

13    no work, and they are trying to take credit and get the money

14    from my clients. They are not in this motion.

15        THE COURT: Maybe this will all be academic when we

16   get into the depth of the problem.

17        Your name, ma'am?

18        MS. BOLATTI:  My name is Silvia Bolatti.

19        THE COURT:  All right.  You gave me a letter March

20   3rd.

21        MS. BOLATTI:  I did, your Honor.  Let me start by

22   saying that I represent Correo Argentino, who is the owner of

23   the accounts that have been restrained in New York.  I also

24   represent --

25        THE COURT:  Has an account or have accounts been

35

1   restrained?

2        MS. BOLATTI:  Yes, your Honor.

3        THE COURT:  Where are then restrained?

4        MS. BOLATTI:  We are taking about the B&P bearer bond

5   account in New York and the Lehman account in Argentina.  This

6   court has granted the plaintiffs in this case, Mr. Gleizer, an

7   ex parte permission to serve restraining orders on those

8   accounts.  That occurred on February 13, 2004, your Honor.

9   That was granted based on the representations made by Mr.

10   Gleizer regarding the meaning of decrees issued by the

11   Argentine government and order issued by the Argentine court.

12        It is our position, your Honor, that the translations

13   that were submitted are inaccurate, they are incomplete, and

14   they fail to represent accurately the meaning of these

15  documents. The plain language of these documents establishes

16  that these accounts are and continue to be the sole ownership

17  of Correo Argentino.

18      THE COURT: What is Correo?

19      MS. BOLATTI: Correo, your Honor, is a concession that

20  was created in 1997 by public bid that was won by a private

21  company, and it basically runs the post office service in

22  Argentina. On November 19 —

23      THE COURT: You say it is a private company?

24      MS. BOLATTI: It is, your Honor.

25      THE COURT: Who owns the company?

36

1       MS. BOLATTI: The company is owned by three major

2   stockholders. One is Sedeco Argentina. The other is the

3   International Finance Corporation, and I believe Banco Belizia.

4       THE COURT: They are not branches of the Argentine

5   government?

6       MS. BOLATTI: Absolutely not, your Honor.

7       THE COURT: Go ahead.

8       MS. BOLATTI: We believe, your Honor, and we have

9   explained in detail in the declaration of legal counsel to the

10  trustee of Correo Argentino, Mr. Julio Rivera, that the

11  statements submitted by counsel are incorrect and inaccurately

12  state that somehow the rescission that the Argentine republic

13  has made of this concession to Correo which occurred by a

14    presidential decree on November 19, 2003, somehow this decree

15    reverted ownership of bank accounts, the bank accounts in New

16    York, to the government.

17         Also, Mr. Gleizer makes a representation that in fact

18    all of the assets of Correo have reverted to the government.

19    We submit, your Honor, this is absolutely false, untrue.

20         We have filed this motion this morning with your

21    Honor, a motion for excessive cost because of the vexatious

22    conduct of counsel.  We are ready, your Honor, today to point

23    out, if I may just give you a couple of examples of the

24    seriousness of the inaccuracies that have been submitted to

25    this court which have caused my client to expend fees to appear

37

1    here today.

2         THE COURT:  I think when Mr. Gleizer first came in and

3    presented material ex parte to me, he relied on a press report.

4    Did you not, Mr. Gleizer?

5         MR. GLEIZER:  The first time, yes, your Honor.  It was

6    supplemented by the concession agreement Article 26.

7         THE COURT:  All right.  Go ahead.

8         MS. BOLATTI:  Your Honor, since Mr. Gleizer raises

9    Article 26, the first thing I would like to point out to the

10    Court is that plaintiff's counsel, on his February 19th

11    affidavit to the Court in support of his motion to confirm at

12    paragraph 3, states the following: "Concession agreement."

13    THE COURT: This is an affidavit?

14    MS. BOLATTI: Yes, your Honor. It is his translation

15 of Article 26.4 of the concession agreement. It is at Exhibit

16 K, I believe, to Dr. Julio Rivera's declaration.

17    THE COURT: What does he say?

18    MS. BOLATTI: Mr. Gleizer cites paragraph 26.4 and

19 says, "The concessionaire must take responsibility for payment

20 of all its assets and liabilities and under no circumstances

21 may transfer them to the concession grantor."

22    Then he concludes, "By Article 26 of the concession

23 agreement, the Republic of Argentina gets all of the assets and

24 none of the liabilities," implying to your Honor that Correo no

25 longer has any assets and the bank accounts in New York are now

                                    38

1 the property of the republic.

2    But, your Honor, he omits to provide the Court with

3 the last portion of the same paragraph 26.4, which says,

4 "Concomitantly, the concessionaire will have the right to

5 collect all the credits in its favor accrued as of that date,"

6 speaking about the date of terms of the concession. This

7 means, your Honor, that it is not true that all of the assets

8 of Correo have been transferred to the republic. It is not

9 true that the bank accounts in New York are the —

10    THE COURT: What did happen between the republic and

11 Correo? What did happen? What is your version?

12        MS. BOLATTI:  Your Honor, these are two parties that

13    entered into a contract.  The republic and Correo entered into

14    a contract that was a concession.  The government alleges that

15    Correo breached the contract, and Correo alleges also that it

16    is the government that has breached that contract.

17        What happened was that on November 19, 2003, the

18    government rescinded the concession, alleging in decree 1075

19    that counsel has cited that they are rescinding the concession

20    because Correo has failed to comply basically with its end of

21    the bargain.

22        What happened subsequently, your Honor, was that

23    certain assets reverted to the government, certain very

24    specific assets, their tangible assets, physical assets, that

25    were necessary in order to run the concession, because the

39

1    government has an interest in the continuity of the service

2    pending the reprivatization of the concession, your Honor.  But

3    it is not true that all of the assets were transferred, and it

4    is not true that these bank accounts in any way have been

5    transferred to the government.

6        In fact, the government has made no allegation in any

7    of the decrees, in any of the resolutions, it has not taken a

8    position in Correo's insolvency proceeding in Argentina that it

9    is entitled or claims any ownership interest in these accounts.

10        THE COURT:  Let me see if I understand.  At some point

11  in the past the republic gave the concession to Correo to

12  handle the mail, right?

13      MS. BOLATTI:  Yes, your Honor.

14      THE COURT:  Last fall the government took the position

15  that it was going to rescind that concession or withdraw that

16  concession for various reasons.

17      MS. BOLATTI:  Correct.

18      THE COURT:  What you are saying is that certain assets

19  of Correo were taken simply to allow the republic to carry on

20  the postal service?

21      MS. BOLATTI:  Yes, your Honor.

22      THE COURT:  Such as maybe post offices and equipment

23  and that kind of thing, is that what you are telling me?

24      MS. BOLATTI:  That is correct, your Honor.  If I may

25  just add to that, that when the concession commenced, the

                                40

1  government gave certain assets to the company that existed with

2  the service at that time.  The contract says those assets, if

3  the concession is rescinded, come back to the government.

4      THE COURT:  What you are saying is that the government

5  has not seized all of the assets of Correo?

6      MS. BOLATTI:  Yes, your Honor.

7      THE COURT:  Particularly, the government has not

8  seized or appropriated the bank accounts we are talking about.

9      MS. BOLATTI:  That's correct, your Honor.  In

10  addition, they have not asserted in any of the decrees that

11  have been cited by counsel or in any decree that they are

12  entitled to those accounts. There is a very clear provision in

13  the concession agreement that says that Correo, upon

14  termination of the concession, yes, it is responsible for the

15  liabilities that accrued prior to the termination of the

16  concession, but it also has the right to continue to receive or

17  collect receivables that accrued prior to the date of

18  termination of the concession. So it would be illogical and it

19  doesn't make any sense to say that it has no assets left. That

20  is not the case.

21      THE COURT: How long did the concession last?

22      MS. BOLATTI: I believe six years, your Honor,

23  approximately.

24      THE COURT: So Correo did this business for six years?

25      MS. BOLATTI: That's right, your Honor.

                            41

1      THE COURT: Let's assume they earned some money, at

2  least they had some cash from their conduct of the business. I

3  guess what Mr. Gleizer asserted was that basically somebody had

4  appropriated the whole company, correct?

5      MS. BOLATTI: That's correct. It is incorrect, but

6  that is what he said.

7      THE COURT: That is what you say he said.

8      MS. BOLATTI: Correct.

9    THE COURT:  I guess in the history of the world there

10   are times that a government has seized a company, right?

11    MS. BOLATTI:  Yes.

12    THE COURT:  You are saying that that did not occur

13   here.

14    MS. BOLATTI:  That is correct, your Honor.

15    THE COURT:  And the company is actually, what, in a

16   bankruptcy proceeding?

17    MS. BOLATTI:  It is in an insolvency proceeding, which

18   is called "concorso" in Argentina.

19    THE COURT:  In Argentina it is an insolvency

20   proceeding.  It has some assets, right?

21    MS. BOLATTI:  It has some assets, absolutely, your

22   Honor.

23    THE COURT:  And it has some liabilities?

24    MS. BOLATTI:  That is correct, your Honor.

25    THE COURT:  The government of Argentina has not taken

42

1    over that whole situation; that situation is being handled in

2    the insolvency proceeding in Argentina?

3    MS. BOLATTI:  Yes, your Honor.  There is a bankruptcy

4    judge that is handling the issues of the assets and liabilities

5    and the claims from creditors.  One very important thing to

6    point out to the Court, your Honor, is that Correo has appealed

7    the decree, the November 19th decree, 1075, that rescinds the

8    concession. So there is a possibility that Correo will

9    continue to run this operation in the future.

10    THE COURT: Didn't the insolvency judge prepare

11    something addressed to this Court?

12    MS. BOLATTI: Yes, your Honor, an exhorto, which is a

13    communication from his court clarifying (a) that the accounts

14    are of Correo's ownership and (b) that Correo continues to have

15    assets and liabilities that are subject to the oversight and

16    the supervision of the estate and of the Argentine bankruptcy

17    court.

18    THE COURT: I don't see, Mr. Gleizer, how you overcome

19    all that.

20    MR. GLEIZER: May I, your Honor?

21    THE COURT: Yes.

22    MR. GLEIZER: Your Honor, there is a concession

23    agreement. Unfortunately, to confuse the issues, counsel

24    starts by pointing to 26.4. Why not start by point 26.1, which

25    is where the Article 26 starts?

43

1    There is a concession agreement that gave to Correo

2    Argentino the possibility of exploiting Correo. It says when

3    this concession terminates, for any reason, and I quote from

4    Exhibit F of Correo Argentino's attorney --

5    THE COURT: Rivera's declaration?

6    MR. GLEIZER: Yes, your Honor. Excuse me, your Honor.

7   He is the attorney for the trustee, not for Correo Argentino.

8       THE COURT:  Mr. Rivera's declaration?

9       MR. GLEIZER:  Yes, sir.

10      THE COURT:  You point to Exhibit F, as in Frank?

11      MR. GLEIZER:  Exhibit F, yes, your Honor.

12      THE COURT:  That is the concession agreement?

13      MR. GLEIZER:  Yes, your Honor.

14      THE COURT:  What part are you now referring to?

15      MR. GLEIZER:  Article 26.

16      THE COURT:  I have it.

17      MR. GLEIZER:  It says that if the concession -- I have

18  my own translation which I believe is better, but I am using

19  the opposition's translation here.  It says if the concession

20  is terminated, then the following consequences shall arise.  It

21  says what will happen.

22      "26.1.  On the expiry date of the concession period,

23  the concessionaire" -- that is Correo Argentino S.A., the

24  private company -- "must turn over the service to the grantor

25  with all assets pertaining thereto."

                              44

1       THE COURT:  The question is, what are the assets

2   pertaining thereto?

3       MR. GLEIZER:  Correct.  That's right.  Now it is all

4   assets.

5       THE COURT:  It doesn't say all assets.  It says all

6   assets pertaining thereto.

7       MR. GLEIZER:  That's correct, your Honor.  Pertaining

8   thereto to what?  That is to the service to the grantor, the

9   service that they are providing, which is the provision of

10  mailing services.

11      So we go to the bylaws of this company to see what

12  does it do.

13      THE COURT:  Where are the bylaws?

14      MR. GLEIZER:  The bylaws, your Honor, are attached as

15  an exhibit to the declaration in Article 4 to the bylaws.

16      THE COURT:  Where are the bylaws, what exhibit?

17      MR. GLEIZER:  Exhibit E to the declaration, I believe,

18  your Honor.  In the middle of the page, it says what is this

19  company.  We notice two things, and I will get back to it,

20  number 3, the term of the company.  The term of the company

21  will be 40 years, four-zero.

22      THE COURT:  I don't see where you are reading.

23      MR. GLEIZER:  Page 2 of Exhibit E.

24      THE COURT:  I have page 2.

25      MR. GLEIZER:  In the middle of the page, your Honor,
                                45

1   it says number 3 under line "Article 3:  Term."

2       THE COURT:  OK.

3       MR. GLEIZER:  The term of the company will be 40 years

4   from its registration.

5      THE COURT:  Right.

6      MR. GLEIZER:  There is another paper that shows that

7   registration was the same day that the decree granted the

8   concession.  Will be for 40 years.

9      THE COURT:  What company is this?

10      MR. GLEIZER:  Correo, Correo Argintino, S.A., which I

11   called CASA, C-A-S-A.

12      THE COURT:  When was this charter promulgated?

13      MR. GLEIZER:  The same day of the decree granting the

14   concession:  August 25, I think, 1997.

15      THE COURT:  What does this have to do with the

16   interpretation of Article 26.1 of the concession?

17      MR. GLEIZER:  It has to do with the fact that it says

18   this is not a regular corporation that lasts forever.  This is

19   a corporation that will last 40 years.  Why is it 40 years?  We

20   look at another exhibit I will find, the exhibit that shows

21   what are the terms and conditions of the bid under which they

22   won and they obtained the concession.

23      THE COURT:  I don't see that you are leading anywhere

24   that has to do with what information Ms. Bolatti has provided.

25   I don't see that this is leading anywhere.

46

1      MR. GLEIZER:  The company is for 40 years because the

2   concession was for 40 years.  This is a company that at Article

3   4, the following article, says that it has one sole purpose,

4  one sole purpose by law.  The purpose of the corporation is to

5  provide a basic universal postal service and the ancillary

6  services.  It has no other purpose.  And it lasts exactly for

7  the period of the concession.  The only purpose it has is to

8  provide the basic universal postal service and the ancillary

9  services.

10      THE COURT:  May I interrupt you.  I do see where you

11  are going.  You are arguing that the only purpose of this

12  corporation Correo is to provide the postal service.  So you

13  are saying that assets pertaining thereto would be all the

14  assets, right?

15      MR. GLEIZER:  That is one of the arguments, yes.

16      THE COURT:  When you are talking about handing over

17  assets, it is a question of fact.  It is not inevitable under

18  the language of paragraph 26.1 that the assets pertaining

19  thereto have to include all the cash of the company.  It is not

20  inevitable.

21      It is a question of fact, it seems to me.  Under

22  Article 26.1 the republic might have required these bank

23  accounts to be handed over or they might not.  The question is

24  what did they do.  It seems to me that that is not something to

25  be resolved by an interpretation of the corporate charter or

47

1  the articles of incorporation which say what you said they say;

2  it is to be determined as a matter of fact.

3        We have, it seems to me, a detailed body of

4    information that in fact these bank accounts were not turned

5    over. So I don't think that we can deal by implication. We

6    have to take the facts.

7        MR. GLEIZER:  Your Honor, if I may?

8        THE COURT:  And you have the judge in the insolvency

9    court, who certainly is familiar with what is going on in his

10    proceeding.

11        MR. GLEIZER:  The insolvency judge, your Honor, tells

12    you -- and if you read the translation that the trustee has

13    presented, the insolvency judge does two things. He tells

14    you --

15        THE COURT:  What exhibit is that now?

16        MR. GLEIZER:  In Exhibit A, your Honor, if you can

17    find the translation. They have not put it on top, so it is

18    difficult to find. If I may, your Honor, in Exhibit A on page

19    1 of the translation, underlined in the original I guess, it

20    says -- this is what the judge is telling you with respect to

21    the situation: "It should be noted that such accounts do not

22    constitute attachable property of the Argentine republic

23    located in the United States."

24        He is very clear. According to him, his opinion is

25    that they are not attachable property, they are property of the

48

1    Republic of Argentina.

2      THE COURT: No, no, no.

3      MR. GLEIZER: If I may finish, your Honor.

4      THE COURT: Please. If all that he said was telling

5   me about how to apply New York law, that would be one thing.

6   But look at page 2. He says CASA -- CASA is a shorthand for

7   Correo -- CASA's bank accounts were not transferred to the

8   Argentine government. Certainly he must know that. That is

9   not an interpretation of New York law.

10      MR. GLEIZER: Your Honor, that's correct. The

11   accounts were not transferred. That is why we are trying to

12   move them. But they have to be transferred. If you notice,

13   the judge has already ordered two payments from these accounts,

14   one for $2.5 million and for $2.2 million. They have already

15   been transferred actually, if you want to talk fact, have

16   actually been transferred from the Lehman bank accounts, and

17   Lehman bank has provided the bank statements to the court and

18   to counsel, and they were provided.

19      If your Honor would like, I can give my copy. It

20   says, "On December 24th and on December 23rd the funds wired to

21   Banco Nacional Antilogorio Official Unidad Administrativa, that

22   is the administrative unit created by the president of

23   Argentina to administer the Argentinian assets. It was already

24   transferred.

25      This is not the only factual basis I have. The judge

49

1   in Argentina says the account names have not been transferred,

2   but the funds yes.

3       THE COURT:  Just a minute.  Those transfers --

4       MS. BOLATTI:  Your Honor, may I?

5       THE COURT:  This was not really sort of like an

6   appropriation by the government, I don't think.

7       MR. BLACKMAN:  No, it was not.

8       MR. GLEIZER:  May I, your Honor?

9       MR. BLACKMAN:  It was a transfer to pay the wages of

10  Correo's employees.  The reason the bankruptcy judge ordered it

11  in Argentina is that under Section 26.3 of the concession

12  agreement Correo is required to pay those wages and benefits up

13  to the time, that accrued up to the time of the handover of

14  service.  That is why the bankruptcy judge ordered those

15  moneys.

16      THE COURT:  Those payments were passed?

17      MR. BLACKMAN:  Yes.  These are wages before decree

18  1075 and the bankruptcy judge ordered them to be sent to

19  Argentina and the administrative unit which now is the employer

20  of those people since the handover, in turn used those moneys

21  to pay.

22      THE COURT:  But before, past employee obligations.

23      MR. BLACKMAN:  Exactly, your Honor.  The money did not

24  go one penny to the Republic of Argentina.

25      THE COURT:  For current operations?

50

1      MR. BLACKMAN: Absolutely not. Absolutely not. That

2  is what the bankruptcy judge said, that is what the trustee

3  said. It really is quite unseemly for Mr. Gleizer to --

4      THE COURT: Don't get into that.

5      MR. GLEIZER: If I may, your Honor. At this time I am

6  filing and serving the proof showing that it is untrue,

7  absolutely untrue, that those moneys went to pay past salaries.

8  In the documents, it is difficult to see because you have to go

9  step by step. I am filing something for the Court to look at

10  and for counsel to see.

11      Maybe, there is a possibility that 70, 75 percent of

12  the 4.7 million were used for salaries. But there is the

13  certainty that between 20 and 25 percent of the 4.7 million

14  went for future salaries.

15      THE COURT: The 4.7 million is the total amount in the

16  account or what?

17      MR. GLEIZER: No. The part they already took out, 2.5

18  plus 2.2.

19      Your Honor, if you allow me for a second to try to

20  paint the big picture here. What happened was this. Correo

21  Argentino, S.A. went into bankruptcy in 2001, over one year

22  before the rescission of this money, went into the bankruptcy

23  proceeding. They were in the bankruptcy proceeding. The whole

24  bankruptcy proceeding thing, there is the trustee, there is

25  Correo Argentino, S.A., and there is the administrative unit in

51

1   front of the Argentinian judge.

2       They are doing like anybody anywhere else does, deals,

3   they are making deals.  Yes, it says here we will give you

4   everything.  But wait with those accounts in New York.  Wait

5   with those accounts in New York.  These are big amounts of

6   money, like $11 million.

7       THE COURT:  How much did you tie up?

8       MR. GLEIZER:  $11 million, approximately.  9.5 in

9   Lehman Brothers and 1.5 in Paribas.

10      They make deals.  They make deals.  Give me the money

11  now, wait a little bit, we are going up on appeal.  Factually,

12  as your Honor says, my opinion is that this whole bankruptcy

13  proceeding has nothing to tell you.

14      However, the judge in the bankruptcy proceeding is

15  constantly saying -- and there is an argument, and I will show

16  you what Black's Law Dictionary says, that shows that the judge

17  in the bankruptcy proceeding has consistently held,

18  consistently held, Correo Argentino, S.A. has no assets.

19      Notably, on February 11, when, as counsel was saying,

20  the appellate court reversed and put it back in the liquidation

21  system, CASA appeared before the judge and told the judge,

22  well, Judge, now we are back in business, we don't have

23  anything except those $11 million in New York, give them back

24   to me.

25        What did this judge say in the February 11 decision

                        52

1    which is attached to the papers?  What did the judge say?  Yes,

2    you are sent back, but you have no assets.  And it says in

3    black and white --

4        THE COURT:  Who said you have no assets?

5        MR. GLEIZER:  The judge, the judge that sent you this

6    letter.  You have no assets.

7        The judge is very careful, Judge Favier Dubois is very

8    careful to tell you that the accounts are in Correo Argentino,

9    S.A.'s name.  That is true.  We are not disputing that.  But he

10   tells you this is not nonattachable property of Argentina.

11       Why is it nonattachable?  He agrees this is property

12   of Argentina.  But why is it nonattachable?

13       THE COURT:  Where does he agree that it is property of

14   Argentina?

15       MR. GLEIZER:  In the underlying part, your Honor, of

16   his letter, in the translation Exhibit A, he says --

17       MS. BOLATTI:  Your Honor, all that says is they do not

18   constitute property of Argentina.

19       MR. GLEIZER:  Read it, your Honor.  "These said

20   accounts do not constitute attachable" --

21       THE COURT:  Where are you reading?

22       MR. GLEIZER:  Page 1 of attached Exhibit A in the

23   translation, your Honor.

24        THE COURT:  We have seen that before.

25        MR. GLEIZER:  Yes.

                              53

1        THE COURT:  It says it is not attachable property.

2   That is not a meaningful statement, because that is up to me to

3   decide under New York law.  I thought you were saying that the

4   insolvency judge said several times that Correo has no assets.

5        MR. GLEIZER:  Yes, your Honor.

6        THE COURT:  Did he ever say that the bank accounts up

7   here are the property of the republic?

8        MR. GLEIZER:  I believe that by implication he said

9   it, because in two opportunities he took the money, and at

10   least 25 percent of that money was used to pay salaries for the

11   future.

12        MS. BOLATTI:  Your Honor, may I respond?

13        THE COURT:  One at a time.  How do we know it is for

14   the future?

15        MR. GLEIZER:  I just served it and I am filing with

16   the Court.  You have to look at these things, at several

17   exhibits at the same time.  It is a long process.  Basically,

18   what it is is --

19        MR. BLACKMAN:  This is no evidence.  This is another

20   declaration of Mr. Gleizer.  There is not a single new

21   document.